340 F.2d 243
 UNITED STATES of America, Plaintiff-Appellee,
v.
James ALLEGRETTI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
David FALZONE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank LISCIANDRELLO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis DARLAK, Defendant-Appellant.
 Nos. 13915-13918.
 United States Court of Appeals Seventh Circuit.
 April 22, 1964.
 Rehearing Granted August 3, 1964 en Banc.
 
 Maurice J. Walsh, Anna R. Lavin, Daniel C. Ahern, Julius Lucius Echeles, Frank W. Oliver, Chicago, Ill., for appellant.
 Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Atty., Chicago, Ill., for appellee; Frank E. McDonald, Chicago, Ill., John Powers Crowley, Asst. U. S. Atty., of counsel.
 Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 James V. Allegretti, Louis A. Darlak, David Falzone and Frank Lisciandrello, defendants, have severally appealed from judgments on the verdict of a jury and their sentences to imprisonment in pursuance thereof.
 
 
 2
 Defendants were tried on an indictment charging in count I that they and Joseph Lisciandrello and Gerald Covelli conspired to possess goods which they knew were stolen from an interstate shipment, in violation of 18 U.S.C.A. § 371. In count II they were charged with possession of Old Sunnybrook whiskey stolen in interstate commerce, and known to have been stolen, in violation of 18 U.S. C.A. §§ 2 and 659.
 
 
 3
 Although the indictment was returned in the district court for the Northern District of Illinois, Eastern Division, it was transferred to the district court for the Southern District of Illinois, Northern Division, for trial.
 
 
 4
 Defendant Joseph Lisciandrello, who suffered illness during the trial, was granted a mistrial.
 
 
 5
 The trial started on March 28, 1962. Ending on April 12, 1962, the jury heard the testimony of 20 government witnesses, as the court reserved its rulings upon repeated objections made by defense counsel to parts of the testimony, relating to acts, conversations and statements made by one or more of the defendants, out of the presence of the other defendants.
 
 
 6
 The district court, on April 12, 1962, spoke directly to the jury and said:
 
 
 7
 "Ladies and gentlemen, will you please give me your attention:
 
 
 8
 "From time to time objections have been made by defendants to testimony as to acts, conversations, and statements, had or made by one or more of the defendants, but out of the presence of the other defendants. Whenever such objections have been made, I have reserved my ruling thereon, upon the Government's avowal to connect up such testimony.
 
 
 9
 "I now rule that the Government has sustained its avowed burden, and has shown to the satisfaction of the Court that a connection does exist between each such act, conversation and statement and the several defendants. [Emphasis supplied].
 
 
 10
 "At this time, therefore, I overrule each objection as to which my ruling was reserved from time to time as such objections were made; and I now rule that the testimony relating to the acts, conversations and statements by the several defendants and in each such instance is admissible and admitted as evidence against all of the defendants whether or not each was present when such acts were done, such conversations were had or such statements were made.
 
 
 11
 "I therefore instruct you that you may consider the testimony of the character above mentioned as evidence against such other defendants who were not then present, as well as against those defendants who are shown by the testimony to have been then present and participating in such arguments, statements, and conversations.
 
 
 12
 "Now, of course, this ruling is in regard only to the matters which the Court reserved from time to time."
 
 
 13
 Thereupon all defense counsel joined in a motion for a mistrial, on the ground that the court had invaded the province of the jury. That motion was denied. Thereupon the government rested its case, and the evidence in defense was received.
 
 
 14
 1. It is undisputed that the government had the burden of submitting to the jury sufficient evidence showing beyond a reasonable doubt that the conspiracy charged in count I existed and that defendants were members thereof. The court accordingly instructed the jury as to its duty in this respect. He also defined the term "conspiracy", as set forth in 18 U.S.C.A. § 371. The court characterized a conspiracy as "a kind of `partnership in criminal purposes' in which each member becomes the agent of every other member."
 
 
 15
 Faced with the duty of deciding whether a conspiracy had been proved by the evidence, the jury was aware that the court had told it that the government had "shown to the satisfaction of the Court that a connection does exist between each such act, conversation and statement and the several defendants." (Italics supplied.) It was for this reason that the court instructed the jury that it might consider certain evidence, which it had mentioned, against such other defendants who were not then present, as well as against those defendants who were present and participating in such statements and conversations.
 
 
 16
 Of course the court had the duty to make a ruling upon the objections in question. However, we know of no requirement that the court state to the jury its reasons therefor. We have no doubt that a statement by the court that the government had shown to the satisfaction of the court that a connection existed between such relevant evidence and the various defendants charged with conspiracy, undoubtedly had the effect of conveying to the jurors the court's belief that a conspiracy existed, which was the very question which the jury was required to ascertain. We are convinced that a jury would construe the word "connection", used by the court in its oral statement, as closely akin to a conspiracy, as characterized by the court in the foregoing instruction.
 
 
 17
 In United States v. Pronger, 7 Cir., 287 F.2d 498 (1961), where defendant Pronger had appealed from a judgment convicting him on the verdict of a jury on a two-count indictment involving the movement in interstate commerce of a stolen automobile, it was urged at the trial that there was a common scheme or plan between Pronger and a second defendant. The court instructed the jury that it should find whether or not there was any common design or common concert of action between the defendants with regard to the charges made and that the jury should determine, from evidence, whether or not the defendants were guilty of the charges. In referring to certain remarks of the court, we said, 287 F.2d at 500:
 
 
 18
 "In a case such as this a defendant cannot be bound by the acts or declarations of another defendant until the common design or common concert of action between the two defendants and their participation have been established. Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680; United States v. United States Gypsum Co., D.C., 67 F.Supp. 397, 451; May v. United States, 84 U.S.App.D.C. 223, 175 F.2d 994, 1008.
 
 
 19
 "Whether intentional or not, we believe that the court's remarks had the effect of telling the jury that the government had proved that the common design or common concert of action of Roberts and Pronger, as charged, had been proved. If they did not have that effect, they merely succeeded in confusing the jury. In either event, Pronger was deprived of a fair trial by jury. `A conviction ought not to rest on an equivocal direction to the jury on a basic issue.' Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350."
 
 
 20
 We reversed as to defendant Pronger and remanded for a new trial.
 
 
 21
 In the case at bar, in attempting to justify the statement by the district court that the government had shown to the court's satisfaction that a connection existed between the evidence to which the court referred and the various defendants, government counsel rely on United States v. Bernard, 7 Cir., 287 F.2d 715 (1961). However, 287 F.2d at 720, it appears that the district court's statement to the jury not only was different from that used in the case at bar, but was properly limited so as not to convey to the jury the opinion of the court that a common plan or design had been shown to exist. But the court did instruct that evidence, with certain exceptions, which when received was not to be considered against any defendant to whom the evidence did not pertain, could thereafter be considered as to all defendants if the jury found that there was a common plan or design proved.
 
 
 22
 We there held that the question of whether there was such a plan or design was properly submitted to the jury.
 
 
 23
 At no place in Bernard did it appear that the district court attempted to give any reason or explanation for its ruling, which was undoubtedly correct. The court simply announced to the jury its ruling admitting the evidence against all defendants, but left to the jury the question of deciding whether a common plan or design was proved beyond a reasonable doubt. We adhere to the opinion written by District Judge Mercer, who sat with us in deciding that case.
 
 
 24
 We are constrained to hold that, in the case at bar, the expression of the court's reasons did have the effect of suggesting to the jurors that the court believed that a conspiracy existed, and for that reason invaded the province of the jury. This requires a reversal of the judgments and sentences on count I.
 
 
 25
 2. In view of our holding in regard to count I, it becomes necessary to consider the verdict, judgments and sentences, insofar as they pertain to count II, which charges defendants with possession of whiskey stolen from a shipment in interstate commerce and known by them to have been stolen.
 
 
 26
 The court instructed the jury that each offense and the evidence applicable thereto should be considered seprately. The jury was further instructed, specifically as to count II, that the essence of the offense there charged "is guilty knowledge on the part of the accused that the goods were stolen". The jury was correctly told:
 
 
 27
 "* * * The crime as alleged in Count II consists of possessing it knowing said goods to have been stolen, and you cannot find the defendant guilty of Count II of this indictment unless you believe beyond a reasonable doubt that such defendants knew the goods were stolen, but it is not necessary to warrant a conviction under Count II that the defendants knew the goods were stolen from an interstate shipment. They must indeed have been stolen from an interstate shipment of freight, but it is sufficient guilty knowledge if he knows they were stolen."
 
 
 28
 To us it is apparent that the government had the burden of proving that each of the four defendants on trial knew that the goods were stolen. The burden of proof beyond a reasonable doubt, of course, rested upon the government, but, as to count II, the government's case did not rely upon the existence of a conspiracy, as charged in count I. In this situation the difficult task placed upon the jury in its consideration of the evidence was to separate those parts which were admitted under the conspiracy count, from any evidence tending to prove the charge in count II.
 
 
 29
 Considering the length of the trial, the number of witnesses and the difficulties inherent in making this separation in their minds, it is our opinion that laymen jurors would have become so confused as to be unable to perform their function effectively. The error in the court's remarks to the jury could not practically have been confined in the juror's minds to count I when the jury was also considering the evidence insofar as applicable only to count II. Thus we are required to reverse the judgments and sentences on count II.
 
 
 30
 We find it appropriate to make these remarks, in view of the fact that we have contemplated the possibility of affirming the convictions on the basis of the verdict on count II only.
 
 
 31
 3. In addition to the matters which we have already discussed, we deem it appropriate to state that there is sufficient evidence in the record to support the verdict as to each of the defendants. We reject defendants' contention to the contrary.
 
 
 32
 4. Defendants have also alleged and assigned as error the admission of irrelevant, incompetent and prejudicial evidence, improper limiting of cross-examination, misconduct of government counsel, a denial of defendants' rights under 18 U.S.C.A. § 3500, a failure of the district court to examine the grand jury minutes of the testimony of witness Olshon in the circumstances, and errors by the court in the giving, and failure to give, certain instructions.
 
 
 33
 Inasmuch as we shall direct a new trial of this case, it is unnecessary at this time to rule upon these alleged errors. There is no reason to believe that, if errors in these respects were in fact committed, they will be repeated upon another trial.
 
 
 34
 For all of these reasons, the judgments and sentences from which these appeals were taken are reversed and this case is remanded for a new trial.
 
 
 35
 Reversed and remanded.
 
 
 36
 CASTLE, Circuit Judge (specially concurring).
 
 
 37
 I agree with Judge Schnackenberg's resolution of the issue he finds dispositive of the appeals. The concern so vigorously expressed by our brother, Judge Knoch, appears to overlook that the merits of the jury system can be preserved and protected only by permitting it to operate without interference by the trial court. Praise of the system does not serve to overcome the departure therefrom evidenced by the record before us. It is essential to the proper preservation and operation of the jury system that the court not invade the province reserved to the jury — either directly or indirectly. It is unfortunate that the error occurred. That my distinguished colleagues are so divided as to the consequences which must be assigned to it convinces me that the jurors — laymen untrained in the niceties of the law — who looked to the trial judge for guidance, can not be said to have been unimpressed by the court's remarks. And the court's statement that it was satisfied that a connection existed between the acts of the several defendants invited a substitution of the "feeling of collective culpability for a finding of individual guilt." Cf. United States v. Bufalino, 2 Cir., 285 F.2d 408, 417.
 
 
 38
 KNOCH, Circuit Judge (dissenting).
 
 
 39
 I cannot agree with the majority opinion and decision, and I therefore dissent. I am convinced that there is no substantial basis for reversal of these judgments as to count 1 of the indictment and no basis whatsoever for reversal of the judgments entered upon count 2 thereof.
 
 
 40
 A conspiracy trial inevitably presents the perplexing question as to the admissibility of evidence of acts and statements done or made by one or more of the defendants, but without the participation of all of the other defendants. The rule for the admission of such evidence against defendants who were not present when the acts were done or the statements made involves a determination by the trial judge that, independently of the statements of others, there is evidence adduced that a conspiracy existed and that the party against whom the evidence is sought to be introduced was a party to the conspiracy. The court must also be satisfied that the act or statement was done or made while the conspiracy existed and that it was in furtherance of the conspiracy. E. g. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Konovsky, 7 Cir., (1953) 202 F.2d 721, 727; Allen v. United States, 7 Cir., (1924) 4 F.2d 688, 694, rehearing den. (1925). The determination of such facts upon which admissibility depends is the province of the trial judge. United States v. Dennis, 2 Cir., (1950) 183 F.2d 201, 230-231, affirmed 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Carbo v. United States, 9 Cir., (1963) 314 F.2d 718, 737.
 
 
 41
 This trial was no exception. Repeatedly, during the presentation of the government's case, evidence of acts and statements by one or more of the alleged conspirators[1] was presented. Objections were made by all defendants not shown to have participated in such acts or statements. Upon the government's avowal that the tendered evidence would be "connected up" Judge Mercer reserved his ruling upon such objections. By the close of the government's case, there remained pending a great number of such objections upon which the court's ruling was reserved. Upon a motion by the government, Judge Mercer overruled all pending objections and admitted the evidence as to all of the defendants.
 
 
 42
 The majority of the court does not hold that that ruling was error, or that the trial judge failed to apply correct principles of law to his ruling. What they do conclude is that Judge Mercer may have conveyed to the jury the idea that the conspiracy was proved because he stated the reason for his ruling that the evidence was admitted as to all of the defendants.
 
 
 43
 One must read certain parts of the court's comments out of context to find any such implication therein. In pertinent part, Judge Mercer said:
 
 
 44
 "From time to time objections have been made by defendants to testimony as to acts, conversations, and statements, had or made by one or more of the defendants, but out of the presence of the other defendants. Whenever such objections had been made, I reserved my ruling thereon, upon the government's avowal to connect up such testimony.
 
 
 45
 "I now rule that the Government has sustained its avowed burden, and has shown to the satisfaction of the Court that a connection does exist between each such act, conversation and statement and the several defendants."
 
 
 46
 So stating, the court then overruled all pending objections and admitted the evidence as to all defendants.
 
 
 47
 It must be remembered that this jury, during days of trial proceedings, had heard the United States Attorney promise upon many, many occasions that the government would "connect up" testimony then being offered in evidence. In the light of that fact, it seems clear to me that that same jury, hearing the court's reference to "connected up" and "connection" in context, would understand that the comments related only to the question of the admissibility of the evidence, not to an ultimate issue of the case. Furthermore, this was not a one day trial. A narrative summary of the trial proceedings fills 377 printed pages of the appendix. Those pages reveal many, perhaps hundreds, of rulings by the court upon objections to evidence of one type or another. Through days this jury had observed the court in its function of determining questions of admissibility of evidence. Thus, the ruling in question is not an isolated incident, but only one of the many rulings upon admissibility which this jury observed and heard. The majority of this court must be little impressed with the efficacy of the jury system in general, and with the intelligence of this jury in particular. For my part, I believe it degrades both to conclude as the majority does, that this jury would mistake the comment in question for the statement of an opinion upon the issue of guilt.
 
 
 48
 We do not even have to conclude that the comment was not erroneous. If it be assumed to be error, when the comment is viewed in the light of this record it was harmless error.
 
 
 49
 Judge Mercer's ruling upon the pending objections came at the close of the government's case in chief. Thereafter, the trial continued for several days before the evidence was closed. The extent of the time elapsed between the comment in question and the court's charge to the jury is suggested by the fact that a narrative summary of the evidence for the defendants and the rebuttal evidence by the government fills 138½ pages of the printed appendix. The probable effect of the comment upon the jury must be determined in the light of that fact, and, further, by viewing the comment in its proper context with the court's final charge to the jury.
 
 
 50
 This trial closed with a charge in detail stating the law which the jury would apply. The point is best illustrated by quoting, verbatim, pertinent parts of that charge.
 
 
 51
 After defining the crime of conspiracy in his charge, the trial judge instructed the jury, in pertinent part:
 
 
 52
 "If you find from the evidence beyond a reasonable doubt that existence of the conspiracy charged in the indictment has been proved, and that during the existence of the conspiracy one of the overt acts alleged was knowingly done by one of the conspirators in furtherance of some object or purpose of the conspiracy as charged, proof of the conspiracy offense charged is then complete; and it is complete as to every person found by you to have been knowingly and willfully a member of the conspiracy at the time the overt act was committed, regardless of which of the conspirators did the overt act.
 
 
 53
 "A conspiracy is an agreement between two or more persons to violate a law of the United States.
 
 
 54
 "In this case, the defendants are charged with having agreed, that is to say conspired, to possess merchandise which had been stolen from interstate commerce, knowing the same to have been stolen from interstate commerce.
 
 
 55
 "Before you can find any defendant guilty of the offense charged in Count 1 of the indictment, you must first find, beyond a reasonable doubt, that such defendant entered into an agreement with another person; that that agreement addressed itself to the knowing possession of merchandise; that that merchandise was stolen from interstate commerce; and that such defendant knew it so to have been stolen at the time of entering into the agreement.
 
 
 56
 "If the Government has failed to prove any of the foregoing elements as to any defendant, then you must find such defendant as to whom the Government has failed to make such proof in a fashion that satisfies your mind beyond a reasonable doubt, not guilty.
 
 
 57
 "In your consideration of the evidence as to the offense of conspiracy charged, you should first determine whether or not the conspiracy existed as alleged in the indictment. If you conclude that such conspiracy did exist, you should next determine whether or not the accused knowingly and willfully became a member of the conspiracy. * * *
 
 
 58
 "Before a jury may find that a defendant, or any other person, has become a member of a conspiracy, the evidence must show that the conspiracy was formed, and that the defendant, or other person who is claimed to have been a member, knowingly and willfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy. * * *
 
 
 59
 "In determining whether or not a defendant, or any other person, was a member of a conspiracy, the jury are not to consider what others may have said or done. That is to say, the membership of a defendant, or any other person, in a conspiracy must be established by evidence as to his own conduct, what he himself said or did.
 
 
 60
 "If and when it appears from the evidence that a conspiracy existed, and that a defendant was one of the members, then the acts thereafter knowingly done, and the statements thereafter knowingly made, by any person likewise found to be a member, may be considered by the jury as evidence in the case as to the defendant found to have been a member, even though the acts and statements may have occurred in the absence and without the knowledge of the defendant, provided such acts and statements were knowingly done and made during the continuance of such conspiracy and in furtherance of an object or purpose of the conspiracy.
 
 
 61
 "Otherwise, any admission or incriminatory statement made outside of Court by one person may not be considered as evidence against any person who was not present and heard the statement given."
 
 
 62
 At another point in his charge, the court told the jury:
 
 
 63
 "If the accused be proved guilty beyond a reasonable doubt, say so. If not proved guilty beyond a reasonable doubt, say so.
 
 
 64
 "Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything but the evidence in the case.
 
 
 65
 "Justice is done when the demands of the law are satisfied whenever a verdict is rendered in accordance with the proof made by all of the evidence to the satisfaction of the jury. * * *
 
 
 66
 "The evidence in the case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence, all facts which have been admitted or stipulated, and all applicable presumptions stated in these instructions." (Emphasis added.)
 
 
 67
 Relative to the allocation of functions between the judge and the jury, the jury was told at the outset of the charge that it was the judge of the factual issues, of the credibility of the witnesses and the weight of the evidence. Finally, the charge was concluded with the following instructions:
 
 
 68
 "Ladies and gentlemen, at the beginning of this charge, I advised you that the Court determines what the law is, but that you, the jury, must determine the fact questions presented by the indictment and the defendants' pleas of not guilty. It is important that you accept the law as given to you by the Court in this charge. It is equally important that you decide all questions of fact upon your appraisal of the credibility of the witnesses and the weight to be accorded to the evidence and that your appraisal of the weight and credibility of the evidence be not influenced by any expression of opinion by the Court upon those matters.
 
 
 69
 "From time to time as this trial has progressed, it has been my duty as judge to rule upon objections and to decide questions related to the admissibility of evidence. In the course of the trial I have made certain statements and comments to counsel from time to time. No statement or comment by me in either of those instances was intended as an expression of an opinion by this court as to the credibility of any witness or as to the weight or credibility of the evidence. I impress upon you, ladies and gentlemen of the jury, that my comments and remarks made from time to time during the trial should be so understood by you; and that nothing said by me during the course of the trial should be taken or understood by you as an expression of an opinion by this court upon either the weight or the credibility of the evidence.
 
 
 70
 "It is proper to add the caution that nothing said in these instructions — nothing in any form of verdict prepared for your convenience — is to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury."
 
 
 71
 The imperative of the issues, as I see them, precludes the need for any apology for the extent of the foregoing quotations. The comment made by the District Judge in his ruling upon the pending objections must be weighed in the light of the whole record, and the charge to the jury in particular. That the majority of this court is unwilling to do. In no other way can I see any foundation for their conclusion that the Judge's statement that evidence was "connected up" burned so hotly in the consciousness of these jurors for days that they were precluded from understanding the court's charge at the close of the case. If that be true, these jurors must still be perplexed at the expenditure of long days hearing evidence related to issues as to which they had already been peremptorily instructed.
 
 
 72
 In his charge at the close of the evidence, Judge Mercer correctly advised the jury that the jury must decide whether a conspiracy had been proved and whether each of the defendants had joined in that conspiracy. The jury was further told that the acts and statements of others might not be considered as evidence in its determination whether each of the defendants was a member of any conspiracy by them found to exist. It was told, also, that acts and statements of a co-conspirator could be considered as evidence against a defendant who did not participate therein only if the jury was satisfied that a conspiracy had been proved and that such defendant was found to be a member thereof. The jury was told, explicitly, what was the evidence upon which its verdict must be found. Finally, the District Judge told the jury that he had not by his charge to the jury or in any statement made by him during the course of the trial expressed any opinion upon the issues of fact, the weight of the evidence, or the credibility of the witnesses. One wonders what more a trial judge could have done. For my part, I am sufficiently naive to believe that these jurors were intelligent enough to understand the court's charge.
 
 
 73
 The zenith of appellate review of trial court decisions is reached when the reviewing court remains mindful of its own function and keeps ever in touch with reason and the realities of the world around it. One of those realities, and a recognized factor of judicial review, is the recognition of the frailties of man. An accused person is entitled to a fair trial, but not to a trial free of all error. Fed.Rules of Crim.Procedure 52(a); Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Were that not the rule, the judgment which could ever be affirmed would be well nigh impossible to achieve. I believe the majority of the court has now abolished that principle by reversing these judgments as to count 1 of this indictment upon an unsubstantial technicality viewed in an attitude separated from reality and oblivious to the context of this record.
 
 
 74
 The situation here is not at all comparable to that which existed in United States v. Pronger, 7 Cir., (1961) 287 F. 2d 498. In Pronger, the ruling upon admissibility and the comments found to be objectionable were made just prior to the court's charge to the jury. The sequence was such that those comments, for all practical purposes, were part of the charge. Under those circumstances, this court concluded that the effect of the Judge's comments was either to tell the jury that the conspiracy was proved, or to create a conflict in the charge itself which was inclined to confuse the jury.
 
 
 75
 By contrast, the comment here involved was made at the close of the government's case, with several days of trial, as summarized in almost 140 printed pages of narrative in the appendix, intervening between the comment itself and the final charge of the jury. The error, if any, was harmless, when viewed in its context in this record.
 
 
 76
 The majority opinion and decision reversing these judgments as to the substantive count of the indictment, count 2, is even more devoid of logic than is the majority opinion relative to count 1. The only reason assigned for reversal as to count 2 is that the difficulty of distinguishing the conspiracy evidence from the evidence relevant to count 2 rendered this lay jury unable to perform its function effectively. It is said that reversal must follow despite the fact that the evidence of record is sufficient to support the jury's verdict finding all of the defendants guilty of the offense charged in count 2.
 
 
 77
 To me the premises contain an inherent contradiction in the light of the record. This jury was not sent out to deliberate blindly without adequate instruction as to the law applicable to count 2. Count 2 charged the possession of liquor which had been stolen from an interstate shipment of freight in violation of 18 U.S.C. § 659. In his charge, Judge Mercer defined the crime charged by an accurate summary of the statutory language. A paragraph of the charge defined possession. All essential elements of the crime were stated with particularity. The jury was advised that it must find that the government had proved each of those essential elements beyond a reasonable doubt before it could find any of the defendants guilty. The guilty knowledge required by the statute was fully and concisely defined. The jury was told that the plea of not guilty entered by each of the defendants placed the whole burden upon the government to prove them guilty beyond a reasonable doubt.
 
 Finally, the jury was charged as follows:
 
 78
 "It is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined upon the evidence which has been admitted against him.
 
 
 79
 "As you have noted, a separate crime or offense is charged against each of the defendants in each count of the indictment. Each offense and the evidence applicable thereto should be considered separately. The fact that you find some or all of the accused guilty or not guilty of the offenses charged should not control your verdict with respect to any other offense charged."
 
 
 80
 The charge given was complete and adequate. Upon this record, the jury can have ignored the conspiracy evidence and, yet have found beyond all reasonable doubt that the whiskey was stolen from an interstate shipment of freight, that each of the defendants had possession of all, or some, of the whiskey and that each of them knew that the whiskey had been stolen. I agree with the majority of the court that the evidence of record is sufficient to prove every essential element of the offense and the guilt of each of the defendants.
 
 
 81
 The jury system assumes that the persons selected after proper voir dire to serve as jurors are equipped with a sufficient degree of intelligence and literacy to understand and comprehend the English language. The system also presumes that jurors can take the law as given to them by the courts, apply the law to the evidence before them, and through that process, render their verdict. I am not willing to presume that any member of this jury was so lacking in intelligence and understanding that he or she was unable to perform his duty. Without making such a presumption, I can find no support for the decision which the majority of this court has reached. I have a strong respect for the fundamental right of every accused person to a fair trial. I have an equally strong respect for the requirement of an orderly judicial process at both the trial court and appellate level. It is my opinion that we will further neither of those causes if these judgments are reversed. Fair trial must, of necessity, not mean "perfect" trial. It must successfully protect the rights of each individual accused, and, at the same time, protect society in general. Only thus will it preserve that high respect for law and order (which is sadly lacking in many areas of our national existence today) without which our form of life and government would soon perish.
 
 
 82
 In the absence of a single iota of proof to the contrary, I confidently believe this jury conscientiously performed the duty which they were empanelled and sworn to perform. Upon this record, each of the defendants has had a fair trial. The evidence of record fully supports the jury's verdict upon each count of the indictment and against each of the defendants. I cannot agree we should sift the record with a fine sieve to find a slight imperfection which could not have enured to the prejudice of any of the defendants for reversal of these judgments.
 
 
 83
 I would affirm the judgment upon each of these appeals.
 
 
 
 Notes:
 
 
 [1]
 The appellants and Joseph Lisciandrello who was not then on trial