UNITED STATES of America, Plaintiff-Appellee,

v.

James Fred BAXA and Clyde Church, Defendants-Appellants.

No. 14386.

United States Court of Appeals Seventh Circuit.

Jan. 11, 1965.

Rehearing Denied Feb. Feb. 3, 1965.

Melvin B. Lewis, Chicago, Ill., for appellant.

Edward R. Phelps, U. S. Atty., Springfield, Ill., Richard E. Eagleton, Asst. U. S. Atty., Peoria, Ill., Leon G. Scroggins, Asst. U. S. Atty., for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

As a result of a jury trial, defendants Baxa and Church were found guilty of charges contained in a six-count indictment. Count One charged Baxa and Church, together with defendants Michael D. Martin and Raymond J. Scheri, with possession of goods, exceeding $100 in value, which had been stolen from a shipment in interstate commerce, and that at the time of such possession, said defendants knew the goods had been stolen, in violation of Sections 2 and 659, Title 18 U.S.C.

Counts Two through Five made identical charges as those in Count One except that each charge related separately to one of the cartons of merchandise mentioned in Count One. Count Six charged the four defendants with conspiracy and charged the conspiracy covered a period from and before October 1, 1961 to and including December 14, 1961.

At the conclusion of the Government's case, defendant Scheri entered a plea of guilty. The jury returned a verdict of guilty against the other three defendants. Defendant Martin filed a notice of appeal but did not pursue the matter further. Defendants Baxa and Church, in this joint appeal, claim errors arising out of the instructions of the Court, rulings on evidence and the failure of the trial court to grant a motion to direct a verdict.

Michael Martin was the principal officer of a corporation which operated "Your Choice Discount Center" near Spring Valley, Illinois. Defendant Scheri held a supervisory position in the store. Martin, at times, referred to Scheri as his partner. Martin's wife held some position in the store and signed most of the checks.

During the night of October 1, 1961, a truck was dispatched from Peru, Illinois, carrying a large quantity of products of General Time Corporation, which used the trademark "Westclox." The products were packed in cartons and were being shipped to various points in California, Massachusetts and New Jersey. Most of the cartons which were stolen contained clocks. The loaded truck disappeared from a trailer dock in Chicago. Two weeks later the trailer was found abandoned in Joliet, Illinois, and the cartons had been removed.

The Discount Center occupied a building 75' x 100'. Adjoining was a park-

ing lot of about the same dimensions which was well lighted at night. The store carried all types of merchandise, including clocks.

On the mezzanine above the sales floor was a series of four offices. One was used by Martin, the manager of the store. His office was equipped with a 1-way glass which enabled persons inside the office to view the sales floor, but rendered the occupants invisible from the sales floor itself.

Storage space for merchandise to be sold at the store was maintained at two known locations. Merchandise deliveries to the store were made by the use of two trucks and several buses owned by the store corporation. The store employed a number of employees in addition to those hereinbefore described. These employees apparently were paid on an hourly basis.

For some time the store was kept under surveillance by FBI agents. On one occasion, an agent saw Baxa there, in conversation with Martin. On December 13, Baxa's auto was seen leaving the store. It proceeded to the rear of a tavern behind which both Scheri and Martin lived.

On December 14, at about 8:30 p. m., Baxa and Church drove to the Discount Store parking lot in separate cars. They parked their cars, entered the store and walked directly to Martin's office where they remained for some fifteen minutes. Scheri was called to the office but left shortly thereafter with Baxa and Church. Martin was heard by a clerk telling Scheri—"Hurry up and help the gentlemen, help load."

Scheri walked to one of the trucks in the parking lot and Church brought his car within a short distance of that truck. Baxa, Church and Scheri then proceeded to load Church's car with cartons from the truck. The FBI agents were able to note the Westclox trademark on certain of the cartons.

When Church's automobile was loaded, he moved it a short distance away and Baxa's car was brought close to the truck. The three men were in the process of loading merchandise from the truck into Baxa's automobile when the FBI agents "moved in."

Baxa admitted the car he was driving was his. Church said he didn't know who owned the other car and advised an FBI agent that he was merely walking through the lot. It later developed that Church, in fact, was not the owner of the automobile he was using.

When Baxa was searched, approximately $1600 currency was found on his person. Both Baxa and Church were advised that they would not have to make any statement and that if they did, it could be used against them in court. Each declined to make a statement.

Martin was taken to each of the cars containing the other defendants. He identified Scheri as his partner, but he claimed that he had not previously seen Baxa or Church.

■ On this appeal, the evidence must be viewed in a light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. We think the jury was justified in drawing the inference that the goods were recently stolen and that defendants Baxa and Church had knowledge of the stolen character of the goods.

■ The term "recently" is a relevant term which cannot be rigidly defined in months, weeks or days. Whether property may be considered "recently" stolen depends on the nature of the property and all of the facts and circumstances shown by the evidence. Furthermore, it should be noted that the Court instructed the jury: "If any possession which the accused may have had of recently stolen property is consistent with innocence, then the jury should acquit the accused."

■ ■ We hold the trial court did not err in admitting statements by defendant Scheri which were made during questioning at the scene of the crime. There was ample evidence of the existence of

a conspiracy, and Scheri was shown to be a co-conspirator. There was no evidence that the conspiracy had ended. In fact, a presumption existed that the conspiracy continued. Poliafico v. United States, 6 Cir., 237 F.2d 97, 106.

Scheri was asked who sent him to handle the stolen goods. He answered— "Well, I am in enough trouble now. I don't want to get anyone else into any trouble." He also said—"If you play the game, you have to pay", and "It's sure true what they say about crime doesn't pay."

We hold there was no error due to the admission into evidence of such statements.

Perhaps the principal point relied on by appellants herein is a claimed error in the instructions to the jury. The instruction reads:

"The Court: Ladies and gentlemen of the jury will you please give me your attention: From time to time objections have been made by defendants to testimony as to acts and conversations and statements being had or made by one or more of the defendants, but out of the presence of the other defendants. Now, when objections were made by the defendant Baxa, the defendant Church and the defendant Scheri I overruled those objections at the time they were made. Now, when objection was made by the defendant Martin I sustained certain of those objections, and then in the case of some of the subsequent witnesses I reserved my ruling on the objection of the defendant Martin.

"Having heard the testimony, I now rule that the government has sustained its burden of connecting the testimony, and at this time I therefore overrule each objection as to my ruling which reserved—and

overrule all of the objections that were sustained, and I now rule that the testimony relating to acts and conversations and statements by the several defendants in each such instance is admissible, and admitted as evidence against all of the defendants whether or not each was present when such acts were done, such conversations were had or such statements were made. I therefore instruct you that you may consider the testimony of the character abovementioned as evidence against each of the defendants who were not then present as well as against those defendants who are shown by the testimony to have been then present and participating in such acts, statements and conversations."

At the time of the oral argument in the instant case, much comment was made as to the effect of our decision in United States of America v. Allegretti, 7 Cir., 340 F.2d 243, handed down on April 22, 1964. We there, by a two to one decision reversed Judge Mercer by reason of an instruction quite similar to the one hereinbefore quoted, and given by the same Judge. Although it has been argued that the instruction in Allegretti was more clearly error than the one given in the case at bar, it should be noted that we granted a rehearing *en banc* in Allegretti; a reargument has been held, and on December 22, 1964, our decision was handed down affirming the judgments of conviction and specifically holding the questioned instruction was not prejudicial error, 340 F.2d 254.

We have considered other points raised by the appellees herein but we do not think they merit further discussion.

As we find no prejudicial error in the case at bar, the judgments of conviction are

Affirmed.