**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan HERRERA, Defendant.**

**No. 74 CR 794.**

United States District Court,
N. D. Illinois, E. D.

Sept. 30, 1975.

James R. Thompson, U. S. Atty., Robert F. Semmer, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Jack P. Rimland, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

The trial of defendant Juan Herrera for the sale of a substance containing heroin in violation of 21 U.S.C.A. § 841(a)(1), presented an opportunity for analysis of the factual prerequisites for the admissibility against Herrera of the declarations of his co-defendant, Jose Rodriguez, who was asserted by the Government, although not alleged in the indictment, to be Herrera's co-conspirator or joint venturer. The situation presented by the evidence is deserving of explication for while the trial was to the court without a jury, in a very real sense it involved the correctness of a portion of a jury instruction widely used in this circuit in conspiracy cases, LaBuy, et al., *Jury Instructions in Federal Criminal Cases,* § 10.00, and the application of Rule 104(a) and (b) of the Federal Rules of Evidence.

The indictment, in one count, alleged that on or about May 2, 1974, the defendants Rodriguez and Herrera "knowingly and intentionally did distribute approximately 23.606 grams of a substance containing heroin, a Schedule I narcotic drug controlled substance" in violation of 21 U.S.C. § 841(a)(1). Rodriguez pleaded guilty but that admission was, of course, not considered against Herrera in any way.

In Herrera's trial the evidence, independent of any declarations by Rodriguez, established the following. By prearrangement, Rodriguez met an undercover narcotics agent, Riley, at approximately 7:00 p. m. on May 2, 1974 in a car wash at the northwest corner of Oakley Boulevard (running north and south) and Grand Avenue (running essentially east and west) on the north side of Chicago. That meeting and all of the subsequent activities which culminated in a sale of narcotics to Riley occurred under the surveillance of two other narcotics agents. Rodriguez left Riley and returned on two occasions. The second time he left he walked south across Grand Avenue and entered a tavern known as "Pepo's."

At about the same time, Herrera arrived in the neighborhood in a brown Toronado Oldsmobile which the evidence showed was registered in the name of one Fergosa. Herrera parked the Toronado on the east side of Oakley just south of Grand, got out and walked west across Oakley in the direction of Pepo's. One agent whose credibility was doubtful, testified that Herrera entered Pepo's.

Shortly thereafter Herrera and Rodriguez emerged from Pepo's and walked together to the northwest corner of Oakley and Grand where they were observed to move their hands in such a manner as to cause one agent to testify that they shook hands, and another (who was observing them with binoculars from a position adjacent to the location of the brown Toronado) to testify that their hands crossed, Herrera's first closed then open and Rodriguez' first open and then closed.

Rodriguez then went to Riley in the car wash, got in Riley's car and delivered to him the heroin alleged in the indictment, in exchange for which Riley paid Rodriguez in official funds.

Rodriguez then returned to Herrera, who was waiting on the northwest corner of Oakley and Grand. One agent testified that Rodriguez appeared to be counting something, but it was his credi-

bility which was doubtful. The other agent said that the two met with outstretched hands. They then left the corner and returned to Pepo's. The arrests of Rodriguez and Herrera were deferred for several weeks pending further investigation.

■ Had that been all of the evidence, Herrera would have been found not guilty. While there was no doubt that Rodriguez had sold heroin to Riley and that Herrera had been with Rodriguez immediately before and after the sale and had been observed acting as if he was working with Rodriguez, those facts standing alone were not sufficient to overcome Herrera's presumption of innocence and persuade me, as the finder of fact, beyond a reasonable doubt that he had aided and abetted Rodriguez in the sale of narcotics so as to render him guilty of the sale. 18 U.S.C. § 2.

■ But that was not all of the evidence. Riley testified to an earlier meeting with Rodriguez at 23rd Street and Albany Avenue on the south side of Chicago in which Riley complained of the quality of some heroin he had previously purchased from Rodriguez. Rodriguez asked Riley to wait for him. Rodriguez left only to return shortly and tell Riley some heroin and cocaine had just come in and for Riley to meet him at Oakley and Grand. Hence the meeting at the car wash. Upon their mutual arrival at the car wash Riley had another conversation with Rodriguez in which the latter said that the heroin was "better". He then pointed toward a person getting in a brown Toronado and said his "partner, Juan" was going to get the heroin. The brown Toronado drove away and Rodriguez left Riley.

Shortly thereafter Rodriguez returned and reported to Riley that he (Rodriguez) could not understand the delay. He left again. It was thereafter that Juan Herrera arrived in the brown Toro-

nado as previously recounted and the transaction occurred.

When these declarations by Rodriguez were added to the earlier summarized evidence, the totality of the proof was sufficient to overcome Herrera's presumption of innocence and to persuade me, as the fact finder, beyond a reasonable doubt of Herrera's guilt as an aider and abettor and hence as a principal under 18 U.S.C. § 2. Accordingly, I found Herrera guilty. A subsequent motion to set aside the finding as not supported by admissible evidence, was denied, judgment was entered on the finding and Herrera sentenced to five years probation.[1]

The LaBuy, et al., jury instruction on conspiracy which is in common use in this circuit provides in material part:

"If it is established beyond a reasonable doubt that a conspiracy existed, and that the defendant was one of its members, then the acts and declarations of any other member of such conspiracy in or out of such defendant's presence, done in furtherance of the objects of the conspiracy, and during its existence, may be considered as evidence against such defendant. . . ." LaBuy, et al., *supra*, § 10.00 at p. 22.

■ The finder of fact in a bench trial should deliberate under the same principles as would a jury. Accordingly, if, as the quoted instruction states, a jury must find "beyond a reasonable doubt that a conspiracy existed, and that the defendant was one of its members" before it could consider the declarations of Rodriguez against Herrera, then a judge in a bench trial, following the same principles, should disregard Rodriguez' statements to Riley because, as previously noted, the evidence absent Rodriguez' statements was not sufficient to persuade beyond a reasonable doubt that

---

1. The presentence report revealed that Herrera, 30 years old, had no prior criminal record. Thus, despite the seriousness of the offence, probation with its attendant supervision for five years, was, in my judgment, the appropriate sentence. Rodriguez, who had a prior narcotics record, was sentenced to 30 months in custody.

Rodriguez and Herrera were engaged in a conspiracy, or here more appropriately a joint venture, to sell heroin. Accordingly, if I had deliberated under the guidance of the quoted instruction, I would have found Herrera not guilty.

■ But the quoted instruction is not an accurate statement of the legal/factual conditions precedent to the fact finder, be it a jury or court, considering Rodriguez' declarations against Herrera. It is sufficient for admissibility of those declarations, and hence their consideration together with all of the other evidence in the case, if there is substantial independent evidence from which a reasonable mind could infer that Rodriguez and Herrera were engaged in a joint venture. And measured by that standard, the declarations were admissible against Herrera for the testimony of their joint actions immediately before and after the sale to Riley was substantial and sufficient for a reasonable mind to infer that they were acting in concert in respect to that transaction.

■■ At the outset it should be observed that the Government's reliance on the doctrine of the evidentiary admissibility of vicarious co-conspirator declarations is not dependent upon a charge of conspiracy in the indictment. *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969); *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968). Nor does the fact that the declarations were made to Riley, a narcotics agent, render them inadmissible. *See Salazar v. United States*, 405 F.2d 74 (9th Cir. 1968). Rodriguez was not aware of Riley's identity; so far as Rodriguez was concerned, Riley was a customer. *Cf. Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

■ Concededly, the conspiracy or joint venture and a defendant's connection therewith must be shown to exist independently of the extra-judicial declarations of the co-conspirator. Otherwise the conspiracy could be proved by the hearsay declarations of the co-conspirator. *Glasser v. United States*, 315 U.S. 60, 75, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Schine Chain Theatres v. United States*, 334 U.S. 110, 117, 68 S.Ct. 947, 92 L.Ed. 1245 (1948); 4 Wigmore, *Evidence*, § 1079(a). And the declarations to be admissible must be made "during the course and in furtherance of the conspiracy [or joint venture]." Rule 801(d)(2)(E), *Fed.R.Evid.* But the preliminary question of the existence of the conspiracy and the defendant's connection therewith is one of admissibility for the court as judge of the law and it is not dependent upon proof beyond a reasonable doubt nor proof from which a reasonable mind could find the existence of a conspiracy or joint venture and the defendant's connection therewith beyond a reasonable doubt.

In *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), certain defendants appealed from their jury conviction in a conspiracy case urging that the trial court had erred in refusing to instruct the jury that the conspiracy and a defendant's connection therewith had to be established beyond a reasonable doubt before the jury could consider declarations of other alleged co-conspirators against the objecting defendants. In rejecting the contention, the court said (at 736):

"The situation is rendered confusing by the fact that the admissibility of this evidence . . . depends upon a disputed preliminary question of fact which coincides with the ultimate jury question upon the merits. The declarations are admissible against the defendants if they are co-conspirators. If they are co-conspirators they are guilty. The problem presented to us is whether the preliminary question (upon the resolution of which only independent evidence is available) is to be resolved by the jury or by the judge. Appellants' view of the law, as set forth in the proposed instructions, is that the preliminary question is to be resolved by the jury upon proof beyond a reasonable doubt.

"Yet if by independent evidence the defendant's position as a co-conspirator

is to be established by the jury upon their judgment beyond a reasonable doubt, there is no occasion ever to resort to the declarations at all. The district court in effect will have told the jury, 'You may not consider this evidence unless you first find the defendant guilty.'"

See also, United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969); United States v. Pisciotta, 469 F.2d 329 (10th Cir. 1972); United States v. Rodriguez, 491 F.2d 663 (3d Cir. 1974).

Perhaps the most noted judicial statement on the subject is Learned Hand's dictum in United States v. Dennis, 183 F.2d 201 (2d Cir. 1950), affirmed on other issues, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). There, the trial court did instruct that the jury must find the existence of the conspiracy and the defendant's connection therewith beyond a reasonable doubt before it could consider the declarations of other co-conspirators against the particular defendant. Appealing on the ground, inter alia, that even that instruction was not enough, defendant's contentions were rejected (at 231):

"The law is indeed not wholly clear as to who must decide whether such a declaration may be used; but we think that the better doctrine is that the judge is always to decide, as concededly he must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing it to consider it as proof only after they too have decided a preliminary issue which alone makes it competent. Indeed, it is a practical impossibility for laymen, and for that matter for most judges, to keep their minds in the isolated compartments that this requires."

■ What is involved here is a question of admissibility which involves preliminary issues of fact to be decided by the court as judge of the law. Rule 104(a) and (b) Fed.R.Evid. In many instances, those preliminary issues of fact do not coincide with the ultimate issues in the case, e. g., is an expert qualified, is a witness unavailable so that his former testimony may be read, was a stranger present during a conversation between an attorney and client? See, Advisory Committee Notes to Rule 104(a). In these circumstances, the preliminary issue need not be resolved by the court as judge of the law beyond a reasonable doubt, or for that matter, by a preponderance of the evidence. All that is required is substantial evidence from which a reasonable mind could infer the existence of the preliminary fact. United States v. John, 518 F.2d 705 (7th Cir. 1975) (authentication of telephone conversation). Furthermore, those preliminary issues are never resubmitted to the trier of fact for reexamination in light of the burden of persuasion applicable to the particular case.

■ When, as here, those preliminary fact issues coincide with an ultimate issue in the case, the court as judge of the law must nonetheless make the preliminary finding and ruling. The preliminary question need not be resolved beyond a reasonable doubt or by a preponderance of the evidence. Substantial evidence in support of the existence of the preliminary fact suffices. In a jury trial, the preliminary finding should not be communicated to the jury. But see, United States v. Baxa, 340 F.2d 259 (7th Cir. 1965). In a bench trial, the preliminary finding does not foreclose a contrary finding on the ultimate issue by the court sitting as the trier of fact at the close of all of the evidence. But a preliminary issue upon which admissibility of evidence turns should not be resubmitted to the fact finder for reexamination in the light of the burden of persuasion appropriate to the case.

Thus, Rule 104(a) provides that, "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). . . ." Then, Rule 104(b) in speaking to the doctrine of conditional relevancy which embraces the problem here (see, McCormick on Evidence, Cleary ed. 1972, § 53, p.

124, fn. 97), and is concerned with those situations in which the factual conditions to admissibility coincide with ultimate issues in the case, provides: "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Neither Rule 104(a) nor 104(b) suggests that the question of admissibility having been resolved by the court sitting as a judge of the law should be resubmitted to the fact finder in conjunction with the ultimate issues in the case.

The Supreme Court has never spoken directly on the subject. General principles of the admissibility of co-conspirator declarations have, of course, been recognized in *Glasser, supra*, and *Schine, supra. See also, Logan v. United States*, 144 U.S. 263, 309, 12 S.Ct. 617, 36 L.Ed. 429 (1892). In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court observed that "the rule which regulates the use of out-of-court statements is one of admissibility, rather than simply of weight, of the evidence." And in *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974), the Court stated: "Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial." Then in a footnote, the Court elaborated, "As a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury. [Citing, *inter alia, Carbo v. United States, supra.*] Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge."

The decisions of the court of appeals for this circuit, like those of the Su-

preme Court, have not squarely addressed the issue of the dichotomy between admissibility of co-conspirator declarations and the burden of persuasion on the ultimate issues in a conspiracy case. To a degree, the earlier quoted LaBuy, et al., instruction 10.00 received the imprimatur of the judicial conference of the circuit. And as recently as *United States v. Donner*, 497 F.2d 184, 193 (1974), the court of appeals, in rejecting a challenge to the overall correctness of a trial court's conspiracy instruction to the jury, said of the LaBuy instruction that it is "nothing more than a statement of well-established law relating to the co-conspirator exception to the hearsay rule," citing *McMahan v. United States*, 424 F.2d 1216 (7th Cir. 1970), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55, which had held that the declarations of one conspirator are admissible against another subject to the conspiracy being established to the satisfaction of the trial court.

In *United States v. Allegretti*, 340 F.2d 254 (7th Cir. 1964), *cert. denied*, 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433, the trial court permitted the jury to consider the declarations of co-conspirators after stating to the jury that the Government had sustained its burden of showing that a conspiracy existed. The court of appeals first held that this statement invaded the jury's province. On rehearing, the court of appeals adopted the original dissenting opinion which cited and approved *Carbo, supra*, and *Dennis, supra.*

In *United States v. Baxa*, 340 F.2d 259 (7th Cir. 1965), *vacated*, 381 U.S. 353, 85 S.Ct. 1556, 14 L.Ed.2d 681, the court approved an instruction in a conspiracy case in which the trial judge said to the jury in ruling on objections which had been reserved, that the "government has sustained its burden of connecting the testimony, and at this time I therefore overrule each objection as to [which] my ruling [was] reserved . . . and I now rule that the testimony relating to acts and conversations and statements by the several defendants in each such

instance is admissible, and admitted as evidence against all of the defendants . . . [and] I therefore instruct you that you may consider the testimony of the character above-mentioned as evidence against each of the defendants . . .." at 262.

Then in *United States v. Santos*, 385 F.2d 43 (7th Cir. 1967), in affirming a conspiracy conviction in respect to which error was asserted regarding rulings on the admissibility of declarations made by co-conspirators, the court held that the trial judge had correctly "made a preliminary determination that the evidence, independent of the extra-judicial declarations complained of, was sufficient to make a prima facie showing of the existence of a conspiracy and of defendant Santos' connection therewith."

It is fair to conclude from *Allegretti, Baxa* and *Santos*, that the Seventh Circuit, if called to the question, would not view the LaBuy, et al., instruction 10.00 as a correct statement of the consideration which a finder of fact should give to declarations of co-conspirators which the trial court has ruled admissible.

 Declarations of alleged co-conspirators are admissible against a defendant if there is substantial independent evidence from which a reasonable mind could infer the existence of a conspiracy or joint venture and the defendant's connection therewith. Once received in evidence, the declarations should be submitted to the finder of fact, be it a jury or a judge, without special conditions being imposed upon their consideration by the fact finder.