EL PUEBLO DE PUERTO RICO, apelado, *v.* ABRAHAM TORRES FIGUEROA, acusado y apelante.

*Número:* CR-87-19          *Resuelto:* 29 de junio de 1990

*Carmen Ana Rodríguez Maldonado*, abogada del apelante; *Norma Cotti Cruz, Subprocuradora General*, y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso permite expresarnos sobre la necesidad de la celebración de una vista, previa y separada del juicio propiamente, bajo las disposiciones de la Regla 9 de las Reglas de Evidencia de 1979 (32 L.P.R.A. Ap. IV) en una situación donde se cuestiona la capacidad de un testigo para actuar como tal a la luz de las disposiciones de las Reglas 36 y 37 de las referidas Reglas de Evidencia, 32 L.P.R.A. Ap. IV. Resolvemos que la celebración o no de dicha vista depende de si el juicio criminal que se celebra es uno por jurado o por tribunal de derecho.

# I

Contra el apelante Abraham Torres Figueroa el Ministerio Público radicó dos pliegos acusatorios ante el Tribunal Superior de Puerto Rico, Sala de San Juan, mediante los cuales le imputó a éste haber infringido las disposiciones de los Arts. 5 y 8A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 415 y 418a; consistente la alegada conducta delictiva en haber "poseído" y "transportado" sobre su persona el día 29 de julio de 1986, en jurisdicción de la referida Sala de San Juan, una escopeta de cañón largo cargada sin tener licencia para ello. Habiendo renunciado el apelante al derecho constitucional a ser juzgado por un Jurado y luego que testificaran los dos testigos de cargo anunciados como tales al dorso de los pliegos acusatorios —única prueba que desfilara ante el tribunal de instancia— dicho foro declaró al apelante culpable en ambos cargos y sentenció a éste, *en grado de reincidencia,*(1) a sufrir una pena de veintisiete (27) años de presidio por la infracción al Art. 5, *supra,* y de treinta (30) años de presidio por la infracción al citado Art. 8A de la Ley de Armas de Puerto Rico.

En el correspondiente recurso de apelación que ante este Tribunal radicara el apelante, éste le imputa al tribunal de instancia haber errado:

A. Al encontrar culpable al acusado en virtud de una prueba que no establece su culpabilidad más allá de duda razonable.

B. Al no permitir, previa objeción de la defensa basada en la Regla 37 de Evidencia, ante, la celebración de una vista informal al amparo de la Regla 9 de Evidencia, ante, para dilucidar la competencia como testigo de la señora Ángela Figueroa Cruz, no obstante haberse ofrecido por la defensa prueba pertinente al respecto.

---

(1) El Ministerio Público había alegado en las acusaciones radicadas que, con anterioridad a los hechos imputados, el aquí apelante había sido previamente convicto y sentenciado por el Tribunal Superior de Puerto Rico, Sala de San Juan, en relación con los delitos de robo e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, sentencias que eran "finales y firmes"; alegación que aceptó el apelante.

C. Al no permitir a la defensa impugnar a la principal testigo de cargo bajo las disposiciones de la Regla 44(B)(3) de las de Evidencia, 32 L.P.R.A. Ap. IV.

## II

El primer señalamiento de error es completamente inmeritorio. La prueba de cargo, de ser creída por el juzgador de los hechos, como obviamente lo fue, es suficiente como cuestión de derecho para sostener las convicciones decretadas.

Como primer testigo de cargo declaró la Sra. Ángela Figueroa, madre del aquí apelante. Dicha testigo declaró, en síntesis y en lo pertinente, que alrededor de las 7:00 P.M. del día 29 de julio de 1976, encontrándose ella en el balcón de su casa, donde igualmente residía el apelante, pudo observar cuando éste, al bajarse del vehículo de motor en que llegara, llevaba en sus manos un objeto largo que ella no pudo precisar bien qué era; que al preguntarle a éste sobre el mismo, el apelante le informó que era un palo, luego de lo cual éste se dirigió al sótano de la casa, saliendo de dicho lugar sin el objeto con que había llegado. Ella le preguntó a su nuera sobre el objeto en cuestión, informándole ésta que se trataba de una escopeta. La señora Figueroa bajó al sótano donde pudo comprobar que efectivamente allí había una escopeta, la cual no estaba momentos antes de llegar su hijo a la casa. Se dirigió, entonces, a la casa de un familiar desde donde llamó a la Policía de Puerto Rico. Al llegar a su casa el Policía Francisco Torres, ella lo llevó al sótano de su casa, lugar donde el mencionado agente ocupó la escopeta en cuestión. El policía Francisco Torres —con excepción de unas diferencias y contradicciones con el testimonio de la señora Figueroa, consistentes las mismas en la existencia o no de una verja y un portón en la residencia de la señora Figueroa— corroboró el testimonio de dicha testigo en cuanto a la llamada telefónica que ésta les hiciera y la ocupación del arma de fuego en controversia en el sótano de la residencia de la señora Figueroa. Identificado satisfactoriamente el arma y sus "municiones" por los referidos testigos de

cargo, dichos objetos fueron admitidos en evidencia por el tribunal de instancia.

Como podemos notar, la frivolidad del primer señalamiento de error —*respecto a la suficiencia en sí de la prueba de cargo*— es patente y aparente. Dicha prueba establece cumplidamente todos los "elementos de delito" requeridos por los citados Arts. 5 y 8A de la Ley de Armas de Puerto Rico.

### III

Luego de que el Ministerio Público llamara a declarar como testigo de cargo a la señora Figueroa y de que ésta prestara el correspondiente juramento y de hacerlo en forma veraz, la representación legal del apelante le expresó al tribunal de instancia que objetaba que se le permitiera declarar por razón de que dicha persona no estaba capacitada para actuar como tal a la luz de las disposiciones de la Regla 37 de Evidencia, *supra*. Afirmó la representación legal del apelante que tenía prueba para demostrar que la testigo Figueroa había estado desde 1960, "hasta el presente", recibiendo tratamiento psiquiátrico; que, en relación con la muerte de su esposo, ella fue acusada del delito de asesinato en primer grado, acusación de la cual fue absuelta en el año de 1983 al determinar el tribunal que carecía de capacidad para distinguir entre el bien y el mal, y que por razón de su incapacidad mental le fue nombrado un tutor para administrar los beneficios que recibe de la Administración del Seguro Social federal.

A la luz de lo antes señalado, solicitó la defensa la celebración de una "vista informal" previa, ello alegadamente según exigido por las disposiciones de la Regla 9 de Evidencia, ante. El tribunal de instancia declaró sin lugar la referida solicitud y procedió a escuchar el testimonio de la señora Figueroa. El apelante, mediante su segundo señalamiento de error, le imputa al foro de instancia haber errado al así actuar.

■ Las Reglas 36 y 37 de Evidencia vigentes, ante, establecen que:

*Regla 36.—Competencia*

Toda persona es apta para ser testigo, salvo disposición en contrario en estas reglas o en alguna disposición de ley.

*Regla 37. Descalificación de testigos*

Una persona no podrá servir como testigo si el tribunal determina que ella es incapaz de expresarse en relación al asunto sobre el cual declararía, en forma tal que pueda ser entendida, bien por sí misma o mediante intérprete, o que ella es incapaz de comprender la obligación de un testigo de decir la verdad.

Dichas disposiciones legales son el resultado de una tendencia moderna, en prácticamente todas las jurisdicciones, de eliminar las reglas tradicionales —vigentes en el Derecho Común— de incapacidad testifical o de descalificación de testigos por el mero hecho de pertenecer a un "grupo" de personas en particular. 3 *Weinstein's Evidence* Sec. 601[03] (1990); 3A *Wigmore on Evidence* Sec. 931 (1970). En nuestra jurisdicción, la vieja y obsoleta doctrina a esos efectos surgía de las disposiciones del Código de Enjuiciamiento Civil, el cual establecía criterios de descalificación para testificar. En lo pertinente al caso de autos, dicho código establecía que no podían ser testigos quienes "no estuvieren en su juicio cabal al presentarse a examen". Art. 401 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. sec. 1733).

■ La transcrita Regla 36 de Evidencia, ante, varió totalmente dicho enfoque, *estableciendo una regla general de capacidad para ser testigo*. Como expresa, al discutir las Reglas 36 y 37 de Evidencia, ante, el Prof. Ernesto L. Chiesa:[2]

*Regla 36 y 37—Competencia [y Descalificación de Testigos]*

*Las reglas tradicionales de descualificación de testigos o de incapacidad para testificar están hoy en franca decadencia.* Como leemos en McCormick, ". . . *today most of the former grounds for excluding a witness altogether have been converted into mere grounds for impeaching his credibility*" (Sec. 61, pág. 134, ed. 1972). La regla 36 sigue este enfoque. *Se establece una regla*

---

[2] E.L. Chiesa, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Vol. 1, págs. 153–154.

*general de capacidad para ser testigo*. La próxima regla establece una excepción general, a la que luego dirigiremos nuestra atención.

Las "causales" o fundamentos para la incapacidad testifical usualmente reconocidos en el *common law* o en estatutos son las siguientes:

1. *incapacidad mental*
2. inmadurez o infancia
3. convicción por ciertos delitos
4. parte o persona con interés en el resultado del pleito
5. marido y mujer
6. juez y jurado
7. creencias religiosas

*Hoy día éstos son solamente factores pertinentes a los fines de la impugnación de testigos,* salvo lo dispuesto en las reglas 41, 42 y 27 con relación a jueces y jurados como testigos, y al privilegio entre los cónyuges. *El enfoque actual no es si, de suyo, determinada condición mental o física constituye un impedimento absoluto para ocupar la silla testifical. Se trata, más bien, de si en el momento de prestar la declaración tal condición constituye un obstáculo para el propósito que anima todo el derecho probatorio: la búsqueda de la verdad. Bajo la regla 37, la condición o defecto del testigo sólo tendrá efecto de incapacidad si, con relación al asunto sobre el cual declararía, no puede prestar testimonio inteligible o confiable.*

.    .    .    .    .    .    .    .

Vamos a considerar someramente los indicadores, por así decirlo, de incapacidad.

1) *incapacidad mental*

La ley anterior disponía que no podía ser testigo quien no estuviere en su juicio cabal al presentarse a examen (32 L.P.R.A. sec. 1733). *En tiempos remotos los "locos" no podían declarar hasta que se probara su capacidad. Hoy día la presunción es de cordura.* La presunción de incapacidad testifical se extendía a los "idiotas", "lunáticos" y hasta a los sordo-mudos. Véase Wigmore, Sec. 498. *Bajo nuestras reglas 36 y 37, toda persona se presume con capacidad para testificar.* Quien pretenda impedir que alguien declare, por razón de incapacidad, debe establecer que tal persona no puede expresarse —por sí o mediante intérprete— de modo que pueda ser entendida, o no entiende su obligación de decir la verdad. Así lo exige la regla 37. Por supuesto, en casos de locura crasa, será muy fácil persuadir al tribunal de que la persona no cualifica. *Bajo*

*la regla 37 el tribunal debe atender a criterios generales de confiabilidad, teniendo en mente los factores cruciales de percepción, memoria y narración a que alude la regla 44(B)(3). Si el testigo tenía capacidad para percibir los hechos, recordarlos y luego narrarlos inteligiblemente en corte, debe permitirse su declaración, salvo que el tribunal estime que el testigo no entiende la seriedad de un procedimiento judicial, que no entiende su obligación de decir la verdad. El hecho de que el testigo hubiera estado loco o hubiera sido declarado judicialmente incapaz no lo excluye, de suyo, según las reglas 36 y 37.* En la jurisdicción federal, el caso de *United States* v. *Benn,* 476 F.2d 1127 (D.C. Cir. 1973) ilustra esta norma . . . . (Escolios omitidos, énfasis suplido y en el original.)

La jurisprudencia federal y estatal norteamericana reiteradamente ha concluido que la incapacidad mental *no* descalifica a una persona para servir de testigo. *United States v. ODOM,* 736 F.2d 104, 112–113 (4to Cir. 1984); *United States v. Gutman,* 725 F.2d 417 (7mo Cir. 1984), *cert.* denegado, 83 L.Ed. 2d 183 (1984); *Batchelor v. Cupp,* 693 F.2d 859, 865 (9no Cir. 1982), *cert.* denegado, 77 L.Ed.2d 1395 (1983); *United States v. Martino,* 648 F.2d 367, 384–385 (5to Cir. 1981); *Kaelin v. State,* 410 S.2d 1355 (Fla. App. 1982). Específicamente se ha decidido que no constituye error del tribunal de instancia denegar una moción para un examen psiquiátrico previo de un testigo del Ministerio Público. *United States v. Martino,* supra; *United States v. Gutman,* supra; *United States v. Brown,* 770 F.2d 768, 770 (9no Cir. 1985), *cert.* denegado, 474 U.S. 1036 (1985); *State v. Piskorski,* 419 A.2d 866 (Conn. 1979); *Schleiss v. State,* 239 N.W.2d 68 (Wis. 1976). En relación con los hechos específicos que plantea el caso de autos, resulta de particular importancia destacar que en estas jurisdicciones se ha resuelto que el hecho de que un testigo haya sido judicialmente declarado incapaz —habiéndosele nombrado un tutor *(guardian)*— de por sí no lo descalifica para servir como testigo. *Boyd v. Edwards,* 446 N.E.2d 1151 (Ohio App. 1982). Asimismo se ha resuelto que un testigo que ha levantado la defensa de insanidad mental en un caso anterior, no está impedido de declarar en un procedimiento judicial posterior ni se requiere

un examen psiquiátrico del testigo, previo a su testimonio en corte. *United States v. Haro*, 573 F.2d 661, 666–667 (10mo Cir. 1978).

■ En consecuencia, forzosa resulta ser la conclusión de que los hechos alegados por la defensa —esto es, que la señora Figueroa hubiera estado, y estuviera, recibiendo tratamiento psiquiátrico; que hubiera sido absuelta por un tribunal de un delito por razón de incapacidad mental, y que hubiera sido declarada incapaz a los fines de administrar los beneficios de seguro social que recibe— *no la incapacitan de por sí para actuar como testigo en un caso en particular.*[3]

No estando excluida, de suyo, la señora Figueroa para actuar como testigo, ¿venía obligado —como sostiene el apelante— el tribunal de instancia por mandato de la Regla 9 de Evidencia, ante, a celebrar una vista previa y separada del juicio en sí con el propósito de determinar si la señora Figueroa era o no una testigo "capaz", esto es, que ella entendía, o estaba consciente de su obligación de decir la verdad? Dados los hechos particulares del caso ante nuestra consideración, entendemos que no. *Veamos por qué.*

La citada Regla 9 de Evidencia, ante, establece, *en lo pertinente*, que:

*Regla 9. Determinaciones Preliminares a la Admisibilidad de Evidencia*

(A) Cuestiones preliminares en relación *a la capacidad de una persona para ser testigo*, la existencia de un privilegio o la admisibilidad de evidencia *serán determinadas por el tribunal sujeto a lo dispuesto en el inciso (B) de esta regla.* Al hacer tales determinaciones, el tribunal no queda obligado por las Reglas de Evidencia, excepto aquellas relativas a privilegios.

(B) Cuando la pertinencia de evidencia ofrecida depende de que se satisfaga una condición de hecho, el tribunal la admitirá al

---

[3] Expresamente así lo reconoció el Comité Asesor de las Reglas de Evidencia de 1979: ". . . Así, pues, el estado mental debe considerarse mayormente en cuanto a valor probatorio y credibilidad de un testigo, que en cuanto a su incapacidad total para declarar." 32 L.P.R.A. Ap. IV, R.37, comentario oficial.

presentarse evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha; *el tribunal puede también admitir la evidencia sujeto a la presentación posterior de la evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha.* (Énfasis suplido.)

Sobre este aspecto, nuevamente nos ilustra el profesor Chiesa:[4]

*Regla 9. Determinaciones preliminares a la admisibilidad de evidencia*

El *"testimonio de base"* —*foundation testimony*— no está regulado en nuestra Ley de Evidencia derogada, Código de Enjuiciamiento Civil. *Se trata aquí de la determinación preliminar a la admisibilidad de evidencia.* Tal determinación preliminar es necesaria en virtud de que la admisibilidad de determinada evidencia *está frecuentemente condicionada a que se satisfaga una condición de hecho.* Así, por ejemplo, el testimonio o declaración en corte de un testigo X puede estar condicionado, en cuanto a admisibilidad, por:

1. si X es un perito, pues su declaración es en la forma de opinión pericial
2. si Y está disponible como testigo, pues la declaración de X versa sobre lo que dijo Y
3. si X tiene conocimiento personal sobre la materia objeto de la declaración
4. *si X no está incapacitado para servir como testigo*
5. si existe un privilegio en virtud del cual la materia —objeto de declaración de X— es privilegiada
6. si la confesión de un acusado —objeto de la declaración de X— fue voluntaria
7. si la declaración de Y —sobre la cual versa la declaración de X— fue en inminente creencia de muerte.

Podríamos enumerar muchas otras, pero basta con estos ejemplos. *En todo caso, la admisibilidad de evidencia va a quedar condicionada a que se satisfaga una condición. La determinación de si se ha establecido la "condición" ha de hacerla el juez. Este, aun en casos ante jurado, actuará como el juzgador de hechos.* Ello es así porque en tal determinación están involucrados unos

---

(4) Chiesa, *op. cit.*, págs. 14–15.

"*standards legales*" que son, más bien, cuestiones de derecho. Sin embargo no puede negarse que el juez, al hacer esta determinación preliminar a la admisibilidad de evidencia, está actuando como juzgador de hechos. *La primera interrogante es la siguiente: ¿deben ser de aplicación las reglas de evidencia para la determinación de una cuestión preliminar a la admisibilidad?* Las autoridades están divididas en torno a este asunto. A base de que las reglas de evidencia, en buena medida, son instrumentos para hallar la verdad en casos ante jurado y considerando que la determinación preliminar es hecha por el juez y no por el jurado, se estima que las reglas de evidencia no deben ser de aplicación, al menos estrictamente. Por otra parte, se caería en un razonamiento circular si se exigiese en todo caso la aplicación de las reglas de evidencia. *Así, por ejemplo, si la determinación preliminar es la capacidad de un niño para declarar y cuando el niño declara para que el juez haga la determinación preliminar de capacidad se objetara a ello a base de que el niño no tiene capacidad para declarar, se caería en un círculo vicioso del cual sólo podría salirse adjudicando la capacidad del niño sin considerar el examen de éste, lo cual es irrazonable. Hay quienes sostienen que no debe haber más limitación que la pertinencia. . . .*

*Una segunda interrogante es la siguiente: ¿qué stándard de suficiencia legal va a gobernar la determinación preliminar?* Siguiendo el lenguaje usado en *U.S. v. Herrera*, 407 F. Supp. 766, 771 (1975), "*the preliminary issue need not be resolved by the court as judge of the law beyond a reasonable doubt, or for that matter, by a preponderance of the evidence. All that is required is substantial evidence from which a reasonable mind could infer the existence of the preliminary fact.*" En ese caso se trataba de la interpretación de la regla 104 de las reglas federales en relación a admisibilidad de manifestaciones de un co-conspirador. *El inciso B de la regla se refiere a "evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha"; [e]se es el stándard de suficiencia necesario para las determinaciones preliminares a la admisibilidad.* (Énfasis suplido y en el original.)

■ En virtud de todo lo antes expuesto, resulta meridianamente claro que la admisibilidad del testimonio de la señora Figueroa estaba sujeta a la condición de que quedara demostrado, mediante evidencia sustancial y a satisfacción del tribunal, que su testimonio era uno confiable —esto es, que ella

era capaz de percibir unos hechos, recordarlos y relatarlos en forma coherente e inteligente— y que dicha testigo era una que entendía la seriedad de un procedimiento judicial.

■ En relación con esta clase de situaciones, la citada Regla 9 de Evidencia hace necesario que en *los juicios por jurado* —donde el juez que preside los procedimientos no es el que va a determinar la culpabilidad o inocencia del imputado de delito y donde hay que evitar, en lo posible, que el jurado entre en contacto con prueba inadmisible— *se celebre una vista previa en ausencia del jurado*, luego de la cual el juez que preside los procedimientos viene en la obligación de hacer una determinación preliminar sobre la "capacidad" del testigo, determinación de la cual depende si posteriormente el jurado va a recibir o no el testimonio de ese testigo.

Las disposiciones de la citada Regla 9 de Evidencia, sin embargo, no deben ser interpretadas de igual forma cuando nos enfrentamos a la situación *de un juicio por tribunal de derecho*. Ello nos llevaría a un absurdo, por cuanto se daría la situación de la celebración de dos vistas ante el mismo "juzgador de hechos". Es por ello que rechazamos el señalamiento de la representación legal del apelante a los efectos de que erró el foro de instancia en el presente caso al no celebrar una "vista informal", separada del juicio propiamente, respecto a su alegación de que la señora Figueroa era una testigo incapaz.

En el presente caso, el juez de instancia escuchó y vio declarar a la señora Figueroa durante el interrogatorio directo que le hiciera el fiscal y durante el contrainterrogatorio a que la sometió la defensa. ¿Qué mejor oportunidad puede tener un tribunal para poder apreciar la capacidad de un testigo para percibir, recordar y relatar coherentemente los hechos en un caso? Luego de haberla observado declarar, el juez de instancia —aun cuando no lo hiciera constar expresamente— obviamente entendió que dicha testigo era una "capaz".

## IV

Mediante el tercer señalamiento de error, sostiene el apelante que erró el foro de instancia al no permitirle a la defensa impugnar a la principal testigo de cargo (la señora Figueroa) bajo las disposiciones de la Regla 44(B)(3) de las de Evidencia.

Un examen de la exposición narrativa de la prueba demuestra que dicho señalamiento se hace *respecto a un solo incidente*, ocurrido el mismo durante el contrainterrogatorio de la referida testigo por parte de la defensa. El tribunal de instancia no le permitió a la defensa, ante una objeción del Ministerio Fiscal, que hiciera una pregunta, cual fue si la testigo recordaba "haber sido acusada por la muerte de su esposo acaecida el día 2 de enero de 1983 y *haber presentado en el juicio la defensa de locura*".[5] La defensa argumentó que tenía derecho a hacer dicha pregunta, pues pretendía *impugnar* la capacidad de la testigo.

Como podemos notar, la pregunta objetada y no permitida por el tribunal de instancia —*la cual se hizo al final del contrainterrogatorio*— se refería al *mismo asunto* que planteara la defensa antes de comenzar la testigo a declarar, el cual ya fue objeto de discusión en la Parte III de la presente ponencia.

No hay duda que la Regla 44(B)(3) de Evidencia dispone, *en lo pertinente*, que:

*Regla 44. Credibilidad e impugnación de testigos*

.  .  .  .  .  .  .  .  .

(B) *Medios de impugnación.* La credibilidad de un testigo podrá ser impugnada o sostenida mediante cualquier evidencia pertinente al asunto de su credibilidad, es decir, a la veracidad o mendacidad, incluyendo los siguientes aspectos:

.  .  .  .  .  .  .  .

(3) Grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara. 32 L.P.R.A. Ap. IV.

En las circunstancias del caso, las cuales ya hemos discutido, el error —de haber sido cometido— resulta completamente

---

[5] Véase la pág. 7 de la Exposición Narrativa de la Prueba.

inocuo. Como expresáramos anteriormente, el tribunal de instancia tuvo *amplia oportunidad* de cerciorarse si la testigo Rodríguez tenía la "capacidad para percibir los hechos, recordarlos y luego narrarlos inteligiblemente". Chiesa, *op. cit.* Así efectivamente lo resolvió en la afirmativa. Ante esa situación la pregunta objetada y no permitida por el tribunal resultaba superflua.

Por los fundamentos antes expuestos, *procede la confirmación de las sentencias apeladas.*