EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Scotiabank de Puerto Rico<br><br>    Recurrida<br><br>           v.<br><br>TCG (The Cornerstone Group), Inc.; Manuel Pedro Martínez González, Lillian Marie Connor Cerezo y la Sociedad Legal de Gananciales compuesta por ambos; Nicholás John Connor Fitzsimons, Irma Cerezo Muñoz y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>    Peticionarios | Certiorari<br><br>2017 TSPR 88<br><br>198 DPR \_\_\_\_ |

Número del Caso: CC-2016-457


Fecha: 24 de mayo de 2017


Tribunal de Apelaciones:

        Región Judicial de Mayagüez-Aguadilla


Abogada de la parte Peticionaria:

        Lcda. Carla Ferrari Lugo


Abogados de la parte Recurrida:

        Lcdo. Eliezer Rivera Lugo
        Lcdo. Antonio Hernández Almodóvar
        Lcdo. Jean Paul Julia Díaz


Materia: Contrato de Mandato: Forma en que un mandante puede autorizar a un mandatario para realizar actos de enajenaciones en su representación sobre los bienes inmuebles de la sociedad legal de bienes gananciales a la que pertenece.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Scotiabank de Puerto Rico<br><br>    Recurrida<br><br>        v.<br><br>TCG (The Cornerstone Group), Inc.; Manuel Pedro Martínez González, Lillian Marie Connor Cerezo y la Sociedad Legal de Gananciales compuesta por ambos; Nicholás John Connor Fitzsimons, Irma Cerezo Muñoz y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>    Peticionarios | CC-2016-457 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 24 de mayo de 2017.

Nos corresponde determinar la forma en que un mandante puede autorizar a un mandatario para realizar actos de enajenación en su representación sobre los bienes inmuebles de la sociedad legal de gananciales a la que pertenece.

Resolvemos que un mandato para enajenar un bien inmueble de la sociedad legal de gananciales debe constar por escrito mediante escritura pública, y debe ser "expreso", lo que implica disponer en términos específicos que se delega al mandatario la facultad de

realizar algún acto de enajenación concretamente sobre el bien inmueble ganancial. De esta forma, reiteramos que la concesión de un poder cuyo lenguaje autoriza la enajenación de "bienes inmuebles del mandante" no incluye autorización para enajenar los bienes inmuebles de la sociedad legal de gananciales a la que éste pertenece.

## I

El 17 de mayo de 1961 Don Nicholás John Connor Fitzsimons (Don Nicholás) y Doña Irma Judith Cerezo Muñoz (Doña Irma) contrajeron matrimonio bajo el régimen de sociedad legal de gananciales. Durante su matrimonio adquirieron una residencia localizada en la Calle 1 de la Urbanización Marbella en Aguadilla.

El 11 de junio de 1998, Don Nicholás otorgó la Escritura de "Poder General" número ochenta y cuatro (84), firmada en Aguadilla, Puerto Rico, en la cual instituyó a su hija, la Sra. Lillian Marie Connor Cerezo (Lillian), como su "mandataria o Apoderada General". En lo pertinente, el poder disponía lo siguiente:

> Que el compareciente, o sea, don Nicholás John Connor Fitzsimons, por la presente designa e instituye como su mandataria o Apoderada General a su hija dona Lillian Marie Connor Cerezo […] y le confiere poder general para que en su nombre y representación, **en relación a <u>todos sus bienes muebles o inmuebles</u>**, y derechos reales o personales cuando fuere aplicable, **realice las siguientes facultades:**
>
> A) Vender, ceder, segregar, agrupar, traspasar, hipotecar […] **los bienes o derechos antes indicados.**
>
> .   .   .   .   .   .   .   .   .

D) […] dar garantías de cualquier clase mediante prenda, hipoteca, fianza o personales **de conformidad con las facultades antes indicadas.**

E) […] otorgar escrituras de cualquier clase, expedir recibos, tomar dinero a préstamo, dar dinero a préstamo, con o sin garantía de cualquier clase.

.    .    .    .    .    .    .    .

G) Otorgar y suscribir toda clase de documentos, públicos o privados necesarios o convenientes **en relación con el ejercicio de todas las facultades aquí conferidas.** […] (Énfasis suplido).[1]

Posteriormente, **el 19 de junio de 2000, Doña Irma y Lillian (en representación de Don Nicholás) otorgaron una Escritura de Constitución de Hipoteca sobre la residencia ganancial localizada en la Calle 1 de la Urbanización Marbella en Aguadilla.** La hipoteca se constituyó a favor de Scotiabank de Puerto Rico (Scotiabank) en garantía de una obligación contraída por TCG The Cornerstone Group, Inc. (TCG), cuya presidenta era Lillian. En la escritura de hipoteca se hizo constar que en esa misma fecha Doña Irma y Lillian (en representación de Don Nicholás) firmaron un pagaré hipotecario a favor de Scotiabank por la cantidad de $89,000. De la escritura de hipoteca surge que a dicho acto comparecieron:

DE LA PRIMERA PARTE: **DON NICHOLÁS […] representado en este acto por DOÑA LILLIAN** […], según PODER GENERAL número ochenta y cuatro (84), otorgado en Aguadilla, Puerto Rico el once (11) de junio de mil novecientos noventa y ocho (1998) **y DOÑA IRMA CEREZO MUÑOZ** […] casada con el compareciente, Don Nicholás John Fitzsimons, propietaria y vecina de Aguadilla […] Comparece de esta misma parte TCG The Co[r]nerstone Group, Inc. […] La comparecencia de TCG The

---

[1] Poder General, Apéndice de la Petición de *certiorari*, págs. 96-100.

Co[r]nerstone Group, Inc. es a los efectos de establecer que el dinero de esta hipoteca será utilizado para propósitos de dicha corporación.
        .    .    .    .    .    .    .    .    .
DE LA SEGUNDA PARTE: SCOTIABANK DE PUERTO RICO […].(Énfasis suplido).[2]

Posterior a dicho otorgamiento, Lillian, el Sr. Manuel Martínez González (esposo de Lillian) y la corporación TCG realizaron otros acuerdos de préstamo y líneas de crédito con Scotiabank y dejaron como garantía el pagaré hipotecario en controversia. En el último de los acuerdos, Scotiabank realizó una reestructuración de la deuda.

Debido a un alegado incumplimiento contractual, el 8 de julio de 2014 Scotiabank presentó una Demanda en cobro de dinero y ejecución de hipoteca en contra de la corporación TCG, Lillian, el esposo de Lillian, Doña Irma, Don Nicholás y las sociedades legales de gananciales compuestas por éstos.[3] La reclamación en contra de Don Nicholás, Doña Irma y la sociedad legal de gananciales compuesta por ambos fue por éstos ser dueños del inmueble dado en garantía.

Cabe señalar que Don Nicholás había fallecido antes de la demanda, por lo que sus herederos le sustituyeron. Luego de contestar la demanda, el 15 de junio de 2015, **los otros hijos de Don Nicholás: Nicholás, María, James, Robert, Irma y Cristina Connor Cerezo, y su viuda Doña**

---

[2] Escritura de Constitución de Hipoteca, Apéndice, págs. 103-122.

[3] Demanda, Apéndice, págs. 53-60.

**Irma (en conjunto peticionarios) presentaron una solicitud de sentencia sumaria.** A la petición anejaron varios documentos, entre estos: el poder otorgado por Don Nicholás a Lillian, la escritura de hipoteca sobre el inmueble ganancial, el pagaré hipotecario y los acuerdos firmados por Scotiabank, Lillian, su esposo y la corporación TCG.[4]

**En síntesis, los argumentos de los peticionarios fueron los siguientes: (1) Del poder otorgado por Nicholás se desprende que éste solo confirió a Lillian la facultad para representarlo en cuanto a sus bienes privativos, por tal razón, Lillian no estaba autorizada para hipotecar el inmueble perteneciente a la sociedad legal de gananciales compuesta por Don Nicholás y Doña Irma; consecuentemente, ante la falta de capacidad representativa de Lillian, la hipoteca sobre el inmueble ganancial es nula y no exigible;** (2) Aun suponiendo que Lillian tenía facultad para hipotecar ese inmueble ganancial, ella se extralimitó en sus facultades al garantizar con el inmueble ganancial una obligación de la corporación de la cual era presidenta, a pesar de que dicha gestión no beneficiaría a Don Nicholás ni fue autorizada expresamente por éste; (3) En la alternativa, la garantía hipotecaria se extinguió como consecuencia de una novación extintiva de la obligación principal ocurrida al reestructurar la

---

[4] Contestación a demanda, Apéndice, págs. 69-71; Moción de Sentencia Sumaria, Apéndice, págs. 72-173.

deuda; y (4) los peticionarios señalaron que la única reclamación que Scotiabank tenía en su contra era por ellos ser dueños del inmueble dado en garantía. En consideración a lo anterior, y a que adujeron que la hipoteca sobre el inmueble ganancial es nula o que ésta se había extinguido, los peticionarios solicitaron que se desestimara la demanda presentada en su contra.

Posteriormente, Scotiabank presentó su oposición a la moción de sentencia sumaria.[5] Alegó que la garantía hipotecaria era válida debido a que el poder disponía claramente que Don Nicholás le confirió a Lillian varias facultades sobre "todos sus bienes muebles o inmuebles". Además, Scotiabank anejó una declaración jurada que disponía que los nuevos acuerdos no tuvieron el efecto de extinguir la garantía hipotecaria.

Luego de evaluar los argumentos de las partes, el Tribunal de Primera Instancia denegó la moción de sentencia sumaria.[6] En específico, concluyó lo siguiente: (1) que el inmueble hipotecado pertenecía a la sociedad legal de gananciales compuesta por Doña Irma y Don Nicholás y ahora pertenece a Doña Irma y a los herederos de Don Nicholás (en conjunto, los peticionarios); (2) que Lillian tenía poder suficiente para hipotecar el bien inmueble ganancial en cuestión, por lo que la hipoteca se

---

[5] Oposición de Scotiabank a moción de sentencia sumaria, Apéndice, págs. 174-191.

[6] Resolución del Tribunal de Primera Instancia, Apéndice, págs. 192-207.

constituyó válidamente; y (3) que no procedía la disposición sumaria del pleito porque, según consignó, "existe controversia de hecho en cuanto a la intención de las partes al momento del pacto de re[e]structuración".[7]

En desacuerdo, los peticionarios acudieron al Tribunal de Apelaciones mediante una Petición de *certiorari*.[8] Posteriormente, dicho foro expidió el recurso y confirmó la determinación del Tribunal de Primera Instancia por los mismos fundamentos esbozados en el dictamen recurrido.

Aún inconformes, el 17 de mayo de 2016 los peticionarios presentaron una Petición de *certiorari* ante este Tribunal. En síntesis, reiteraron que la hipoteca sobre el inmueble ganancial era nula por la falta de capacidad de Lillian para representar a Don Nicholás en dicho acto, y en la alternativa, señalaron que la hipoteca se extinguió como resultado de la restructuración de la deuda.

En consideración a lo alegado por los peticionarios, el 22 de septiembre de 2016 emitimos una orden a Scotiabank para que en el término de 20 días expusiera las razones por las que no procedía revocar la determinación del Tribunal de Apelaciones, de conformidad con lo resuelto en Beauchamp v. Reg. de Aguada, 27 DPR 385 (1919), y en Pueblo v. Registrador de Humacao, 34 DPR 103

---

[7] Resolución del Tribunal de Primera Instancia, Apéndice, pág. 206.

[8] Resolución del Tribunal de Apelaciones, Apéndice, págs. 1-15.

(1925). El 18 de octubre de 2016 Scotiabank presentó su "Escrito de Mostración de Causa". En cuanto a las instrucciones específicas que le conferimos, Scotiabank mencionó que los casos Beauchamp v. Reg. de Aguada, supra, y Pueblo v. Registrador de Humacao, supra, son distinguibles a la controversia que hoy atendemos porque aquí ambos cónyuges comparecieron a la escritura de hipoteca: Don Nicholás (mediante el poder otorgado a Lillian) y Doña Irma, quien firmó personalmente. Sin embargo, Scotiabank omitió mencionar las importantes diferencias entre un bien privativo y uno ganancial, y no discutió el por qué el lenguaje del poder otorgado por Don Nicholás en relación a "todos sus bienes muebles o inmuebles" es distinto al examinado en Beauchamp v. Reg. de Aguada, supra, y en Pueblo v. Registrador de Humacao, supra. En los casos mencionados interpretamos que un mandato sobre los "bienes de la señora compareciente" y otro sobre los "bienes […] que tengan los poderdantes" se refieren a los bienes privativos y no incluye los gananciales.

Como expondremos a continuación, del poder examinado se desprende que Lillian no estaba autorizada a representar a Don Nicholás en el otorgamiento de una hipoteca sobre el bien inmueble ganancial. Por ello, ante el requisito de consentimiento escrito de **ambos** cónyuges para hipotecar los bienes inmuebles de la sociedad legal de gananciales, resolvemos que la comparecencia de Doña

Irma al acto de hipoteca no tuvo el efecto de subsanar el defecto en la comparecencia de su esposo, Don Nicholás. Consecuentemente, resolvemos que la hipoteca que Lillian firmó en representación de Don Nicholás es nula.

## II

### A. <u>Los bienes gananciales y los bienes privativos</u>

En nuestro ordenamiento jurídico, las personas que se unirán en matrimonio pueden escoger, mediante capitulaciones matrimoniales, el régimen económico que regirá durante su matrimonio.[9] En ausencia de capitulaciones matrimoniales que dispongan un régimen económico distinto, nuestro sistema legal decreta que la pareja contraerá matrimonio bajo el régimen de sociedad legal de gananciales.[10]

Es norma reconocida que la sociedad de gananciales es una entidad jurídica separada y distinta de los cónyuges que la componen.[11] Asimismo, hemos interpretado que **los bienes adquiridos durante un matrimonio, cuyo régimen económico es el de la sociedad legal de gananciales, pertenecen a la sociedad conyugal y no a sus miembros.**[12] De manera que al disolverse el matrimonio y al liquidarse la

---

[9] Art. 1267 del Código Civil, 31 LPRA sec. 3551.

[10] Íd.

[11] <u>Int'l Charter Mortgage Corp. v. Registrador</u>, 110 DPR 862, 863-64 (1981).

[12] Véanse: <u>Pujol v. Gordon</u>, 160 DPR 505, 511 (2003); Art. 1295 del Código Civil, 31 LPRA sec. 3621; <u>Beauchamp v. Reg. de Aguada</u>, 27 DPR 385 (1919); Art. 1322 del Código Civil, 31 LPRA sec. 3697.

sociedad legal de gananciales es que cada cónyuge adquiere la mitad de las ganancias y beneficios.[13]

**Para mantener una distinción en la titularidad, se ha reconocido, como principio fundamental, que los bienes gananciales son bienes separados y distintos de aquellos bienes que pertenecen a cada cónyuge (bienes privativos).[14]** Por tal razón, se han desarrollado normas y requisitos de administración y disposición distintos para cada uno. En lo concerniente, nuestro Código Civil establece una presunción rebatible de gananciabilidad y dispone que el cónyuge que reclame su naturaleza privativa deberá derrotar tal presunción.[15]

Primeramente, un bien privativo es aquel que pertenece exclusivamente a un cónyuge.[16] En ese contexto, el Art. 92 del Código Civil, 31 LPRA sec. 285, reconoce plena libertad sobre los bienes privativos al disponer que "[e]l marido y la mujer tendrán el derecho de administrar y disponer libremente de sus respectivas propiedades particulares".

Por otro lado, un bien ganancial es aquel que pertenece a la sociedad legal de gananciales, por ejemplo, son gananciales los bienes adquiridos por título oneroso

---

[13] Íd.

[14] Universal Funding Corp. v. Registrador, 133 DPR 549, 553 (1993).

[15] Véase, Art. 1307 del Código Civil, 31 LPRA sec. 3647.

[16] Son bienes privativos los dispuestos en el Art. 1299 del Código Civil, 31 LPRA sec. 3631, y aquellos que son privativos por su naturaleza personalísima. Véase, Díaz v. Alcalá, 140 DPR 959, 968-69 (1996).

durante el matrimonio a costa del caudal común.[17] Una de las particularidades de los bienes gananciales es que se requiere el consentimiento escrito de ambos cónyuges para donarlos, enajenarlos u obligarlos a título oneroso, salvo ciertas instancias. Sobre esto, el Art. 91 del Código Civil, 31 LPRA sec. 284, señala que:

> **Los bienes <u>inmuebles</u> de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento <u>escrito</u> de <u>ambos</u> cónyuges.** (Énfasis suplido).

Asimismo, el Art. 1313 del Código Civil, 31 LPRA sec. 3672, añade lo siguiente:

> No obstante lo dispuesto en [el Art. 91] de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

**B. <u>El mandato o poder para bienes gananciales</u>**

En nuestro ordenamiento jurídico no se puede contratar a nombre de otro sin estar por éste autorizado o sin tener por la ley su representación legal.[18] Es preciso advertir que "**[e]l contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo,**" a no ser que lo ratifique la persona a cuyo nombre

---

[17] El Art. 1301 del Código Civil, 31 LPRA sec. 3641, enumera los bienes gananciales.

[18] Véase Art. 1211 del Código Civil, 31 LPRA sec. 3376.

se otorgue antes de ser revocado por la otra parte contratante". (Énfasis suplido).[19]

El "mandato" es un contrato por el cual se obliga una persona a prestar algún servicio o a hacer alguna cosa, por cuenta o encargo de otra.[20] Por la extensión de los asuntos comprendidos en el poder, éste puede ser general o especial. El "general" comprende todos los negocios del mandante, mientras que el "especial" comprende uno o varios negocios determinados.[21] Por las operaciones que el mandatario está facultado a realizar, el mandato puede concebirse en términos generales o en términos específicos. Respecto a ello, el Art. 1604 del Código Civil, 31 LPRA sec. 4425, dispone que:

> El mandato concebido en términos generales no comprende más que los actos de administración. **Para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio se necesita mandato expreso**. (Énfasis suplido).

El "mandato expreso" es la manifestación clara, concreta y determinada del mandante para autorizar un acto de enajenación.[22] Es de vital importancia señalar que **el mandato expreso "debe ser interpretado restrictivamente"** con el propósito de que no haya "margen para proposiciones y reflexiones que puedan conducir a la extralimitación del apoderado y adulteración del mandato". (Énfasis

---

[19] Íd.

[20] Véase, Art. 1600 del Código Civil, 31 LPRA sec. 4421.

[21] Véase, Art. 1603 del Código Civil, 31 LPRA sec. 4424.

[22] Zarelli v. Registrador, 124 DPR 543, 554 (1989).

suplido).[23] **De esta forma, "[e]n casos de disposición de inmuebles, el mandato debe ser lo suficientemente específico para que no haya lugar a dudas sobre el alcance de los actos permitidos".** (Énfasis suplido).[24] Ahora bien, "la especificación requerida se refiere a la mención de los actos o negocios jurídicos permitidos y no a [los] requisitos en torno a la descripción de los bienes objeto del contrato o a la localización de éstos".[25]

En lo concerniente, en Zarelli v. Registrador, 124 DPR 543, 555 (1989), discutimos la normativa antes citada y dispusimos que las disposiciones del Código Civil referentes a los mandatos debe interpretarse en unión a las normas sobre bienes de la sociedad legal de gananciales. De esta forma, concluimos que el mandato expreso para enajenar bienes inmuebles gananciales debe constar por escrito, en una escritura pública.[26]

La controversia que ahora se nos presenta sobre la suficiencia de un mandato para enajenar bienes inmuebles gananciales ha sido objeto de examen en varios casos ante este Tribunal Supremo, prácticamente todos resueltos a inicios del Siglo XX. En estos casos se ha decidido,

---

[23] Íd.

[24] Íd.

[25] Gorbea Valles v. Registrador, 133 DPR 308, 319 (1993).

[26] Véase Zarelli v. Registrador, supra, pág. 555. Sobre el requisito de escritura pública, el Art. 1232(5), 31 LPRA sec. 3453(5), especifica que debe constar en documento público: "(5) […] el poder para administrar bienes, y cualquier otro que tenga por objeto un acto redactado o que deba redactarse en escritura pública, o haya de perjudicar a tercero".

mediante opiniones breves, que la facultad del mandatario cuando se le concede un mandato sobre "bienes del mandante" se limita a sus bienes privativos y no contempla los bienes de la sociedad legal de gananciales a la que pertenece. Ello está fundamentado en que los bienes gananciales son distintos a los privativos y que a estos les aplican distintas normas. Particularmente, en The Juncos Central Company v. Registrador, 29 DPR 89, 90 (1921), expresamos que:

> **De acuerdo con la jurisprudencia constante de este Tribunal Supremo un poder en que se faculta al apoderado para 'comprar, vender, etc., cualquiera clase de bienes de la poderdante,' no confiere facultad al mismo para vender aquellos bienes que pertenezcan a la sociedad de gananciales de la poderdante con su esposo.** (Énfasis suplido).

Asimismo, en el caso de Vidal v. Registrador, 12 DPR 167 (1907), la Sra. Ana Valenciano (mandante) autorizó a su madre, la Sra. Isabel Curbelo y Machín (mandataria), a vender los **bienes que le pertenecían** o los que pudiera adquirir en lo sucesivo. Utilizando el mandato, la mandataria compareció en representación de la mandante en la venta de un solar y unas casas de la sociedad legal de gananciales. Al acto de la venta también compareció el esposo de la mandante, el Sr. Eduardo Puertas y Martínez. Posteriormente, las partes presentaron la escritura de compraventa en el Registro de la Propiedad, sin embargo el Registrador se negó a inscribirla. Al revisar la denegatoria de inscripción, interpretamos que el poder

otorgado por la mandante únicamente facultaba a la mandataria a representarla en cuanto a sus bienes privativos, pues no incluía disposición alguna sobre los bienes de la sociedad legal de gananciales. Consecuentemente, resolvimos que la compraventa del inmueble ganancial era nula por falta de consentimiento de la mandante y confirmamos la denegatoria de inscripción.

En López Landrón v. Reg. de la Propiedad, 15 DPR 722 (1909), Doña Ana María Gutiérrez Igaravídez (mandante) otorgó un poder en el que ésta facultó a su esposo, Don Rafael López Landrón (mandatario), a "hipotecar cualesquiera **bienes inmuebles de la otorgante**". (Énfasis suplido). Al examinar dicho poder, resolvimos que Don Rafael no podía representar a su esposa en el acto de hipoteca del inmueble ganancial porque, según interpretamos, "los términos en que está redactado el poder limitan la facultad del mandatario [a] los bienes que pertenecen a la otorgante". Nuestra conclusión estuvo fundamentada en las diferencias entre los bienes privativos y los gananciales. Sobre esto, expusimos lo siguiente:

> Es un principio fundamental de la ley civil […] que solamente al disolverse el matrimonio es cuando la esposa adquiere la completa posesión de los bienes que le pertenecen y que han sido adquiridos durante el matrimonio; y que **durante el matrimonio los bienes adquiridos constante el mismo […] son los conocidos con el nombre de gananciales que pertenecen [a] la sociedad conyugal y n[o] [a] ninguno de sus miembros.**

Es también un principio fundamental […] que para que un mandatario pueda legalmente hipotecar los bienes de su mandante debe recibir del mismo un poder expreso; y se dispone además, […] que el consentimiento de la esposa para gravar los bienes adquiridos durante el matrimonio debe también ser uno expreso y n[o] tácito. (Énfasis suplido).[27]

En G. Llinás & Co. v. Registrador, 23 DPR 759 (1916), Doña María de los Ángeles Mariani y Mariani confirió a su esposo un poder que lo autorizaba, en lo pertinente, para que "venda, arriende, permute, hipoteque y ceda cualesquiera fincas rústicas o urbanas, censos, servidumbres, créditos hipotecarios y otros derechos reales y personales **que correspondan a la mandante** y que adquiera en lo sucesivo". (Énfasis suplido). Luego de estudiar el lenguaje del poder, concluimos que el esposo no estaba autorizado a hipotecar el inmueble ganancial en representación de su esposa.

En Beauchamp v. Reg. de Aguada, 27 DPR 385 (1919), Don Víctor P. Martínez, por sí y como apoderado de su esposa, vendió varias fincas pertenecientes a la sociedad legal de gananciales compuesta por ambos. En la segunda cláusula del poder, la esposa le confirió a Don Víctor las siguientes facultades: "Para que compren, vendan, permuten o hipotequen cualquiera clase de **bienes de la señora comareciente**, ya sean muebles, inmuebles, etc.". (Énfasis suplido). Al revisar ese poder, este Tribunal determinó que Don Víctor estaba facultado únicamente para vender los

---

[27] López Landrón v. Reg. de la Propiedad, 15 DPR 722 (1909).

bienes inmuebles que pertenecían privativamente a su esposa, pero que no lo estaba para enajenar los de la sociedad conyugal en representación de su esposa.

Asimismo, en Nin v. Registrador, 27 DPR 412 (1919), concluimos que un poder que confería facultades sobre "**sus actuales bienes** o a los que adquiera en lo sucesivo" no facultaba al mandatario a gravar los bienes de la sociedad legal de gananciales a la que pertenecía la mandante. (Énfasis suplido). En The Juncos Central Company v. Registrador, supra, interpretamos que un mandatario no tenía facultad para vender un inmueble ganancial en virtud del poder que disponía lo siguiente: "Para que venda absolutamente o con pacto de retracto, cualesquiera fincas rústicas o urbanas **que posea** en la actualidad o adquiera en lo sucesivo". (Énfasis suplido).

En Pueblo v. Registrador de Humacao, 34 DPR 103 (1925), unos esposos otorgaron un poder a un tercero que disponía lo siguiente: se confiere facultades al mandatario para que venda **todos los bienes semovientes e inmuebles que tengan los poderdantes** o puedan adquirir en lo sucesivo por cualquier título o concepto. Al examinarlo, resolvimos que dicho poder no confirió facultad al mandatario para vender un inmueble de la sociedad conyugal a la que pertenecían los mandantes.

En contraste, en Loubriel v. El Registrador de San Juan, 126 DPR 728 (1918), interpretamos que la esposa otorgó poder suficiente a su esposo para representarla en

la enajenación de bienes inmuebles de la sociedad de gananciales. El poder otorgado por Encarnación Ortega Saborit a favor de su esposo Gonzalo Torres Sirera contenía la siguiente cláusula:

> Asimismo da autorización tan amplia y eficaz como en derecho se requiera a su referido esposo para que a nombre de ambos y teniendo desde ahora por prestado el consentimiento de la que dice, pueda en cualquier tiempo vender, enajenar, gravar e hipotecar y de cualquier otro modo obligar a título oneroso los **bienes inmuebles de la sociedad de gananciales.** (Énfasis suplido).

En Torres Santana v. El Registrador de Caguas, 26 DPR 791, 792 (1918), también concluimos que el mandatario podía actuar en representación del mandante en cuanto a los bienes gananciales de la sociedad a la que pertenecía, en virtud de un poder que disponía lo siguiente:

> Que confiere poder […] a favor de su legítimo esposo, don Juan Ramírez Muñoz […], para que, **con relación a los bienes propios de la compareciente y a los gananciales de ambos,** lo ejercite en estos términos: Sexto. --Para que venda, libremente o con condiciones, las fincas rústicas y urbanas **que pertenezcan actualmente a la que suscribe,** así como las que adquiera en lo sucesivo, estipulando el precio que creyere más ventajoso. (Énfasis suplido).

Luego de examinar la doctrina aplicable, entendemos que el poder examinado en Torres Santana v. El Registrador de Caguas, supra, no cumplía con los requisitos del mandato expreso para la enajenación de bienes inmuebles gananciales. Según se desprende, aunque el poder mencionaba los bienes gananciales, las facultades de disposición se confirieron expresamente sobre los bienes

"que pertenezcan actualmente a la que suscribe", entiéndase sobre sus bienes privativos y no sobre los gananciales.

Posteriormente, en Zarelli v. Registrador, supra, pág. 555, la controversia que se nos presentó fue si un poder general otorgado en Estados Unidos por un cónyuge a favor del otro constituyó el mandato expreso requerido en Puerto Rico para la enajenación de bienes inmuebles gananciales. Allí resolvimos que el mandato estudiado era uno general, por lo que éste únicamente confería al mandatario facultades de administración y no de disposición. A pesar de que en Zarelli v. Registrador, supra, revisitamos la doctrina de mandato, en dicha ocasión no reiteramos la importancia de distinguir entre los bienes gananciales y los privativos, por no ser necesario, pues el poder examinado era un mandato general en términos generales que no identificaba algún bien ni confería facultades específicas de enajenación al mandatario.

Por otro lado, en esta ocasión analizamos un poder especial redactado en términos específicos sobre bienes privativos. Ante el desconocimiento por parte de los foros recurridos de la doctrina aplicable, y en atención a que ésta no ha sido visitada desde inicios del siglo pasado, nos vemos en la necesidad de unificar la jurisprudencia discutida. De esta forma, señalamos que para enajenar un bien inmueble de la sociedad legal de gananciales se

requiere el consentimiento escrito de ambos cónyuges. Si lo desean, ambos cónyuges, o uno de éstos, podrán otorgar un poder para que un mandatario actúe en su representación sobre los bienes gananciales. **El mandato para enajenar un bien inmueble ganancial debe constar por escrito en escritura pública y debe ser "expreso", lo que conlleva disponer en términos específicos que se autoriza al mandatario a realizar algún acto de enajenación concretamente sobre el inmueble ganancial.** La especificidad en el mandato expreso es un requisito esencial para la enajenación de los bienes inmuebles gananciales y está fundamentada en los principios básicos de contratación en el régimen económico matrimonial de sociedad legal de gananciales y en las destacadas diferencias entre los bienes privativos y los gananciales. En virtud de lo expuesto, resolvemos que la concesión de un poder en cuyo lenguaje el mandante autoriza actos de enajenación sobre "todos sus bienes", "los bienes que le pertenecen", "los bienes de la otorgante", "los bienes que correspondan a la mandante", "los bienes de la compareciente", "sus actuales bienes", "los bienes que posea", "todos los bienes que tengan los poderdantes" o algún lenguaje similar, se refiere a los bienes privativos del mandante y no incluye autorización para enajenar los bienes inmuebles de la sociedad legal de gananciales a la que pertenece.

## III

¿Podía la Sra. Lillian Marie Connor Cerezo representar a Don Nicholás en la firma del pagaré y la escritura de hipoteca sobre el inmueble perteneciente a la sociedad legal de gananciales compuesta por Don Nicholás y Doña Irma? Respondemos en la negativa. Nos explicamos.

Primeramente, de los documentos anejados a la moción de sentencia sumaria se desprende: (1) que el bien inmueble dado en garantía hipotecaria a Scotiabank pertenecía a la sociedad legal de gananciales compuesta por Don Nicholás y Doña Irma, y ahora pertenece a Doña Irma y a los herederos de Don Nicholás (en conjunto, los peticionarios), y (2) que a la firma del pagaré y de la escritura de hipoteca comparecieron Lillian, en representación de Don Nicholás, y Doña Irma.

Como mencionamos, para enajenar un bien inmueble ganancial se requiere el consentimiento escrito de ambos cónyuges. Asimismo, hemos explicado que el mandato para enajenar un bien inmueble de la sociedad legal de gananciales debe constar por escrito en escritura pública y debe ser "expreso", lo que conlleva disponer en términos específicos que se autoriza al mandatario a realizar algún acto de enajenación concretamente sobre el inmueble ganancial.

En lo pertinente, la Escritura de Poder número ochenta y cuatro (84) otorgada por Don Nicholás a Lillian disponía lo siguiente:

[…] poder general para que en su nombre y representación, **en relación a todos sus bienes muebles o inmuebles,** y derechos reales o personales cuando fuere aplicable, realice las siguientes facultades: […] hipotecar […] los bienes o derechos antes indicados [y] dar garantías de cualquier clase mediante prenda, hipoteca, fianza o personales de conformidad con las facultades antes indicadas […]. (Énfasis suplido).

De los hechos materiales no controvertidos de la moción de sentencia sumaria y tomando como guía la jurisprudencia citada que requiere interpretar el mandato expreso restrictivamente, colegimos que, del lenguaje del poder examinado, se desprende que Don Nicholás le confirió expresamente a Lillian la facultad para representarlo en ciertos actos sobre "todos sus bienes muebles o inmuebles", entiéndase sobre aquellos que le pertenecían privativamente. No obstante, en dicho poder Don Nicholás no le otorgó a Lillian la capacidad de representarlo en algún acto de enajenación sobre los bienes de la sociedad legal de gananciales a la que pertenecía. Por consiguiente, Lillian no tenía un mandato expreso que le autorizara a realizar el negocio jurídico bajo análisis: la constitución de una hipoteca sobre el inmueble ganancial.

Como mencionamos, nuestro Código Civil dispone que "[e]l contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo, a no ser que lo ratifique la persona a cuyo nombre se otorgue antes de ser revocado por la otra parte

contratante".[28] Ante la falta de capacidad representativa de Lillian, y considerando la ausencia de ratificación del negocio jurídico por parte de Don Nicholás o sus herederos, resolvemos que la hipoteca que Lillian firmó en representación de Don Nicholás sobre el inmueble ganancial es nula por falta del consentimiento de Don Nicholás y, por tanto, no inscribible en el Registro de la Propiedad. Aclaramos que la comparecencia de Doña Irma al acto de hipoteca no tuvo el efecto de subsanar el defecto en la comparecencia de su esposo Don Nicholás pues, como mencionamos, para enajenar bienes de la sociedad legal de gananciales se requiere el consentimiento escrito de **ambos cónyuges**.

Debido a que de los hechos materiales no controvertidos surge que Scotiabank no tiene alguna otra reclamación en contra de los peticionarios que no sea como dueños del inmueble que se intentó dar en garantía hipotecaria, concluimos que no existía justificación para que se permitiera la continuación de los procedimientos en su contra. Erraron el Tribunal de Primera Instancia y el Tribunal de Apelaciones al no declarar "ha lugar" la sentencia sumaria presentada por los peticionarios. Consecuentemente, revocamos las sentencias dictadas por los foros recurridos y ordenamos la desestimación sumaria de la demanda presentada en contra de los peticionarios.

---

[28] Véase, Art. 1211 del Código Civil, 31 LPRA sec. 3376.

**IV**

Por los fundamentos expuestos, se expide el recurso de certiorari, se revocan las sentencias dictadas por el Tribunal de Apelaciones y el Tribunal de Primera Instancia, y se ordena que se declare "ha lugar" la moción de sentencia sumaria y se desestime sumariamente la demanda en cuanto a los hermanos Nicholás, María, James, Robert, Irma y Cristina, de apellidos Connor Cerezo, y Doña Irma Judith Cerezo Muñoz. De esta forma, el Tribunal de Primera Instancia podrá continuar los procedimientos en contra de los otros demandados.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Scotiabank de Puerto Rico<br><br>Recurrida<br><br>v.<br><br>TCG (The Cornerstone Group), Inc.; Manuel Pedro Martínez González, Lillian Marie Connor Cerezo y la Sociedad Legal de Gananciales compuesta por ambos; Nicholás John Connor Fitzsimons, Irma Cerezo Muñoz y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Peticionarios | CC-2016-457 | Certiorari |

SENTENCIA

San Juan, Puerto Rico, a 24 de mayo de 2017.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se expide el recurso de certiorari, se revocan las sentencias dictadas por el Tribunal de Apelaciones y el Tribunal de Primera Instancia, y se ordena que se declare "ha lugar" la moción de sentencia sumaria y se desestime sumariamente la demanda en cuanto a los hermanos Nicholás, María, James, Robert, Irma y Cristina, de apellidos Connor Cerezo, y Doña Irma Judith Cerezo Muñoz. De esta forma, el Tribunal de Primera Instancia podrá continuar los procedimientos en contra de los otros demandados.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez no intervinieron. La Jueza Asociada señora Pabón Charneco está inhibida.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo